# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

|  |  |  |
|---|---|---|
| JONATHAN WALLACE, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GREG ABBOTT, in his official capacity as | ) | No. 1:25-cv-02030-DAE |
| Governor of Texas, KEN PAXTON, in his | ) | |
| official capacity as Attorney General of | ) | |
| Texas, FREEMAN F. MARTIN, in his | ) | |
| official capacity as Director, Texas | ) | |
| Department of Public Safety | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |
| | ) | |

## <u>DEFENDANT GOVERNOR ABBOTT'S MOTION TO DISMISS</u>

The Council on American-Islamic Relations was founded to serve as a public-relations front for Hamas—the Palestinian branch of the Muslim Brotherhood—and it continues to serve in that role today. The United States Department of Justice concluded in the late 2000s that CAIR provided support to terrorist organizations and listed it as an unindicted coconspirator in the *Holy Land Foundation* case against funders of Hamas. A federal district court agreed, finding "ample evidence" that CAIR was associated with Hamas.

Because CAIR and the Muslim Brotherhood are associated with Hamas, Governor Abbott issued a Proclamation that designated them as Foreign Terrorist Organizations and Transnational Criminal Organizations under Texas law. If an entity is proven in court to be a Foreign Terrorist Organization, the court may enjoin the entity's activities as constituting a "public nuisance" and take other "reasonable" steps to prevent the organization from engaging in "future" unlawful activities. TEX. CIV. PRAC. & REM. CODE § 125.065. An entity proclaimed by the Governor to be a Transnational Criminal Organization is prohibited from purchasing real property or leasing real property for one year or longer. *See* TEX. PROP. CODE § 5.252(3).

Plaintiff Jonathan Wallace is a lawyer living in New York—not a member of CAIR or the Muslim Brotherhood—who feels strongly about the Proclamation and seeks to parlay those feelings into a federal lawsuit. But strong feelings do not make a federal case or controversy, and Mr. Wallace has failed to allege facts that demonstrate he has suffered or will suffer a concrete injury from the Governor's Proclamation. His lawsuit against Governor Abbott fails at the threshold for other grounds as well. Most obviously, the Governor has sovereign immunity from this official-capacity suit because he does not enforce the Proclamation against anyone, much less a New York resident who has no concrete plans to visit Texas.

Mr. Wallace's claims also fail on the merits. Governor Abbott declared CAIR to be a terrorist organization because he agrees with a federal district court that there is "ample evidence" showing that CAIR is related to Hamas. The Proclamation does not directly regulate anyone's protected speech, and he did not issue the Proclamation based on CAIR or the Muslim Brotherhood's speech or religion. Mr. Wallace provides nothing more than conclusory allegations claiming otherwise. Mr. Wallace's due-process argument is even easier to resolve because he owns no property in Texas and has not pleaded that he intends to acquire any. He thus is not deprived of any property interest whatsoever. His remaining grab-bag of claims fail largely for similar reasons.

## BACKGROUND

On November 18, 2025, Governor Greg Abbott issued a Proclamation declaring the Muslim Brotherhood and the Council on American-Islamic Relations to be Foreign Terrorist Organizations and Transnational Criminal Organizations under Texas law. *See* Proclamation by the Governor of the State of Texas at 1 (Nov. 18, 2025) ("Proclamation") (attached as Exhibit A). In support of these designations, the Proclamation recounted the overwhelming and publicly available evidence that CAIR works in tandem with the Palestinian branch of the Muslim Brotherhood, Hamas.

Hamas was founded in 1987 as the Palestinian branch of the Muslim Brotherhood, and CAIR was created as a front group for Hamas in the 1990s. Current CAIR Executive Director Nihad Awad attended the meeting in Philadelphia where CAIR was conceived as a front to support Hamas and undermine the Oslo accords. *United States v. Holy Land Found. for Relief & Dev.*, 3:04-CR-0240-P, 2009 WL 10680203, at *9 (N.D. Tex. July 1, 2009), *rev'd in part on other grounds*, 624 F.3d 685 (5th Cir. 2010). The FBI wiretapped the meeting and recorded participants discussing the need for an organization in the United States to promote Hamas to a Western audience. *Id.* For

that reason, among others, the FBI concluded that CAIR was a "front group" for "Hamas and its support network" in the United States. Proclamation at 1.

The Department of Justice thus listed CAIR as an unindicted co-conspirator in the prosecution of the Holy Land Foundation. Although CAIR disputed this characterization, the district court in that case concluded there was "ample evidence" to show that CAIR conspired with Hamas. *Holy Land Found.*, 2009 WL 10680203, at *7. The Governor's Proclamation relied on more recent events as well, such as the numerous convictions of individuals associated with CAIR—including in Texas—for terrorism and related crimes. Proclamation at 2. And to show that CAIR has not stopped its support of Hamas, the Proclamation recounts CAIR Executive Director Nihad Awad's declaration that he was "happy to see" the October 7 terrorist attack that killed not only over 1,000 Israelis but also 46 American citizens. *Id.*

Jonathan Wallace sued Governor Abbott, Attorney General Paxton, and Director of the Texas Department of Public Safety Freeman F. Martin a few weeks after Governor Abbott issued the Proclamation. As Mr. Wallace's complaint recounts, he is an "attorney based in New York" who often represents clients who bring First Amendment challenges. Complaint, ECF No. 1 ¶ 6 (Dec. 11, 2025). Since Hamas's October 7 terrorist attack on Israel and his "semi-retirement from paid practice," *id.* ¶ 16, Mr. Wallace's practice has concentrated on "representing students, faculty, and professionals" that he believes were "targeted for pro-Palestinian speech, anti-Zionist advocacy, or membership in Palestinian, Arab, and Muslim communities." *Id.* ¶ 6. Because Mr. Wallace represents these clients, he is concerned that he may be affected by Governor Abbott's Proclamation because he "engages with individuals and organizations that may be characterized as 'affiliates' or 'members' of the Muslim Brotherhood or CAIR under the proclamation's vague and overbroad definitions." *Id.* In addition to representing clients, Mr. Wallace also runs a blog

3

where he intends to speak about "the Muslim Brotherhood, CAIR, and the unconstitutionality of the Proclamation," and believes his speech will be chilled because it could be construed as "'promoting or aiding' the Muslim Brotherhood's 'criminal activities.'" *Id* ¶¶ 20-21. He is also concerned that *"[i]f"* he "maintains any office or property in Texas for purposes of representing clients with connections to targeted organizations," that property could be subject to forfeiture. *Id.* ¶¶ 59(c), 67 (emphasis added).

Because he is concerned about enforcement of the Proclamation against him, Mr. Wallace filed this suit. He alleges that the Proclamation violates the First Amendment, Due Process Clause, Equal Protection Clause, Commerce Clause, principles of federal preemption, the Bill of Attainder Clause, and a handful of Texas laws. Governor Abbott now moves to dismiss the complaint.

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). Conclusory factual allegations are to be disregarded. *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). The Court also does not have to accept legal conclusions as true. *Iqbal*, 556 U.S. at 678. A claim for relief is implausible on its face when "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citation omitted). Separately, facial motions to dismiss based on a lack of jurisdiction under Rule 12(b)(1), like this one, are judged by the same standard. *See Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

**ARGUMENT**

**I.      Mr. Wallace's Claims Fail at the Threshold.**

**A.  Mr. Wallace Lacks Standing.**

To establish standing, a Plaintiff must adequately plead "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). For an injury to be "imminent," it must "'be certainly impending.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990)). "Allegations of *possible* future injury' are not sufficient." *Id.*

This case can start and end with the application of *Clapper*. At the very most, Mr. Wallace has pleaded that he may suffer some sort of "*possible*" future injury and not the "certainly impending" injury that *Clapper* requires. *Id.* The primary injury that Mr. Wallace claims is that he may have a suit brought against him due to the Proclamation's designations. Sure, "the threat of enforcement . . . amounts to an Article III injury in fact," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014), but the allegations in the complaint fail to show that such a proceeding would even be plausible, much less "certainly impending." *Clapper*, 568 U.S. at 409 (quoting *Whitmore*, 495 U.S. at 158).

Nothing in the Complaint shows that Mr. Wallace will face an enforcement action in Texas, even if he engages in all the activities that he wants to undertake. To begin with, the Proclamation does not apply to Mr. Wallace. He is not a member of CAIR or the Muslim Brotherhood. Nor has he pled that he is a lawyer for either organization. Instead, he claims standing to challenge the designations because he "regularly engages with individuals and organizations that *may be*

5

characterized as 'affiliates,' 'members,' or 'persons promoting or aiding' the Muslim Brotherhood or CAIR." ECF 1 ¶ 58 (emphasis added). This allegation (and the ones like it in the complaint), are insufficient. *Clapper*, 568 U.S. at 409. For one, Mr. Wallace provides only the kind of conclusory allegation that federal courts must ignore; he fails to even identify the individuals and organizations that he "engages" with, much less why they "may be" considered "affiliates," "members" or "persons promoting or aiding the Muslim Brotherhood or CAIR." ECF 1 ¶ 58. Mr. Wallace cannot aggregate unidentified relationships and parlay them into a concrete injury. *Cf. Summers v. Earth Island Institute*, 555 U.S. 488, 497 (2009).

Even Mr. Wallace's allegations about his association with unnamed individuals in the anti-Zionist movement fail to show that the Proclamation would be enforced against Mr. Wallace. He does not allege that *he* is an associate, member, or person promoting or aiding the targeted entities' criminal activities. He only alleges that he wishes to engage with people who "may be" classified as such. ECF 1 ¶ 58. But the Proclamation, by its own terms, does not apply to individuals who associate with individuals who associate with CAIR and the Muslim Brotherhood. He is one step too far removed, even if one credits his conclusory hypothetical relationships. *Cf. FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024).

It makes no difference that Mr. Wallace claims to have censored himself or refrained from other activities because of the Proclamation. *See* ECF No. 1 ¶ 23. If "mere conjecture about possible governmental actions" that resulted in self-injury were sufficient to establish standing, then Article III's "certainly impending" requirement would be toothless. *Clapper*, 568 U.S. at 420; *Glass v. Paxton*, 900 F.3d 233, 239 (5th Cir. 2018). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Thus, Mr. Wallace's decisions to not post on his

blog or not work with individuals in the anti-Zionist movement simply because they may be tangentially related to CAIR or the Muslim Brotherhood does not move the ball. ECF No. 1 ¶ 23.

Mr. Wallace's standing problems run even deeper when one drills into the actual legal and practical effects of the designations in the Proclamation. First, the designation of CAIR and the Muslim Brotherhood as a Transnational Criminal Organization prohibits them from acquiring additional real property in Texas. *See* TEX. PROP. CODE § 5.252(3). Mr. Wallace has not alleged that he seeks to acquire *any* real property in Texas. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) (distinguishing legal injuries from injuries in fact). The closest he gets is stating that "[i]f Mr. Wallace maintains any office or property in Texas for purposes of representing clients with connections to targeted organizations, he could be subjected to divestiture proceedings." ECF No. 1 ¶ 59(c). But that kind of "hypothetical" harm does not create an injury in fact. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992) (quotation marks omitted). As a decision in this district explained, even a "future" intention to "purchase additional property . . . does not show a present injury in fact." *Huang v. Paxton*, No. 1:25-CV-1509, 2025 WL 3654180, *4 (W.D. Tex. 2025).

Second, the designation as a Foreign Terrorist Organization does not create standing because it is simply the Governor's announcement of his legal position. The Governor, as "Commander-in-Chief" of the State, is tasked with protecting Texas from hostile foreign threats. *See* TEX. CONST. art. IV, § 7; TEX. GOV'T CODE § 437.209. The Governor made a determination concerning the Muslim Brotherhood and CAIR, as he has for other entities before. *See, e.g.*, Proclamation No. 41-4140, 49 Tex. Reg. 7701 (Sept. 27, 2024) (designating Tren de Aragua a foreign terrorist organization). Such solemn pronouncements are entitled to due weight by a court. *Cf. Moyer v. Peabody*, 212 U.S. 78, 84 (1909). But they do not dispose of a reviewing court's obligation to interpret the statutes at issue when a matter is properly before it. Texas Penal Code

§ 71.01(e) defines "Foreign Terrorist Organization," and Texas Civil Practice & Remedies Code § 125.065(a)(1) establishes that "[i]f *the court* finds that a . . . foreign terrorist organization constitutes a public nuisance, *the court* may enter an order . . . enjoining a defendant," *id.* (emphasis added). The Governor's independent ability to interpret the law and pronounce executive findings of fact does not mean those acts *by themselves* alter CAIR's or the Muslim Brotherhood's legal status, much less Mr. Wallace's.

One more standing issue exists. To have standing, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Nat'l Infusion Ctr. Ass'n v. Becerra*, 116 F.4th 488, 503 (5th Cir. 2024) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)). When the government allegedly violates the rights of a nonparty, "the party with the right has the appropriate incentive to challenge (or not challenge) governmental action." *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). To overcome this prohibition on third-party standing, a plaintiff must show that he "has a 'close' relationship with the person who possesses the right," *id.* at 130 (quoting *Powers v. Ohio,* 499 U.S. 400, 411 (1991)), and "there is a 'hindrance' to the possessor's ability to protect his own interests." *Id.*

The vast majority of Mr. Wallace's claims rely on violations of the putative rights of the Muslim Brotherhood and CAIR, which means he cannot raise those claims. For example, his First Amendment claims allege retaliation against those entities (but not against Mr. Wallace); his Equal Protection claim turns on the fact that those groups are Muslim (but Mr. Wallace is not Muslim); and his Bill of Attainder claim alleges that specifying CAIR and the Muslim Brotherhood by name is unlawful (but Mr. Wallace is not named). ECF No. 1 ¶¶ 76, 97, 106(a). The entire gravamen of Mr. Wallace's complaint is that the Proclamation violates the rights of the named entities, but he

has no relationship with them, and CAIR is already suing to protect its own interests. *See Kowalski*, 543 U.S. at 129; *see also CAIR v. Abbott*, No. 1:25-CV-01878 (W.D. Tex.).

**B. Sovereign Immunity Bars Each Count Against Governor Abbott**

Because 42 U.S.C. § "1983 does not abrogate state sovereign immunity," *NiGen Biotech LLC v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015), a § 1983 claim against a state officer in his official capacity is barred by sovereign immunity unless an exception applies, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54, 58 (1996) (describing the general sovereign-immunity framework). The *Ex parte Young* doctrine is one such narrow exception. It applies when a plaintiff seeks prospective injunctive relief against the state officer tasked with enforcing the putatively unconstitutional law. *Okpalobi v. Foster*, 244 F.3d 405, 414 (5th Cir. 2001) (en banc).

Governor Abbott does not enforce the designations in the Proclamation, so Mr. Wallace "cannot sue the Governor under *Ex parte Young*." *United States v. Abbott*, 85 F.4th 328, 333 (5th Cir. 2023). Courts ask two questions relevant to this case to determine if the defendant can be sued under *Ex parte Young*: whether (1) the state official has more than the "general duty" to see that the laws of the state are implemented, *i.e.*, a 'particular duty to enforce the statute in question'; and (2) the state official has "a demonstrated willingness to exercise that duty." *Okpalobi*, 244 F.3d at 414. Without both, the official-capacity defendant is immune. *Id.*

This motion can be resolved at the duty-to-enforce requirement. Governor Abbott has no "particular duty to enforce the statute[s] in question." *Id.* First, the designation that CAIR and the Muslim Brotherhood are a Foreign Terrorist Organization authorizes additional remedies, such as nuisance abatement, if a court finds they are engaging in a public nuisance. *See* TEX. CIV. PRAC. & REM. CODE § 125.065. But the only state officials tasked with pursuing that remedy in a nuisance action are "[a] district, county, … city attorney[ and] the attorney general." *Id.* § 125.064. So

Governor Abbott lacks authority to use the enforcement tools against Mr. Wallace, even if the designation applied to him. *See Abbott*, 85 F.4th at 334.

Second, the designation as a Transnational Criminal Organization is also not enforced by the Governor. The prohibition on acquiring real property is primarily enforced by the Attorney General. *Wang v. Paxton*, 161 F.4th 357, 362 (5th Cir. 2025). The statute explicitly states that "[i]f *the attorney general* determines that a violation of this subchapter occurred*, the attorney general . . .* may bring an in rem action against real property." TEX. PROP. CODE § 5.255(c)(1) (emphases added). The Attorney General may also "refer the matter to the appropriate local, state, or federal law enforcement agency" after he has established "procedures" for them "to examine a purchase or acquisition of an interest in real property." *Id.* § 5.255(a), (c)(2); *Wang,* 161 F.4th at 362. Governor Abbott is not the "Attorney General," nor is he a "law enforcement agency." The statute thus does not assign enforcement to the Governor.

It does not matter for either designation that Governor Abbott is Texas's Chief Executive Officer. TEX. CONST. art. IV, § 1. As the Fifth Circuit has explained, the "governor's general duty to take care that the laws are faithfully executed is" not a "sufficient connection under *Young . . .* to dissolve the Eleventh Amendment bar." *Okpalobi*, 244 F.3d at 415 (quotation marks omitted). Nor does it matter that Governor Abbott has recommended that other officials enforce the designations in the Proclamation. When the Governor directs another official to take an action, *that official* is the proper defendant for the purposes of *Ex parte Young*. *See Abbott*, 85 F.4th at 334. So even when Governor Abbott issued an order proclaiming that "*[t]he Texas Department of Public Safety* (DPS) is directed to stop any vehicle upon reasonable suspicion of a violation of" one of his Proclamations, he was still not a proper *Ex parte Young* defendant. *Id.* at 335.

For the state-law counts in the complaint, Governor Abbott is also immune from suit under

*Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89 (1984), which holds that a state official is immune from a lawsuit that demands he comport his behavior with state law, *see also Hughes v. Savell*, 902 F.2d 376, 378 (5th Cir. 1990). Count VII alleges that Governor Abbott has violated the Texas Administrative Procedure Act and Texas Constitution. *Pennhurst* entirely forecloses that claim in federal court. *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022).

### C. Mr. Wallace Lacks a Cause of Action Under 42 U.S.C. § 1983 for his Federal-Preemption Count.

Mr. Wallace brings his Supremacy Clause exclusively under 42 U.S.C. § 1983. *See* ECF No. 1, Count V. Section 1983 creates a cause of action for individuals who have their federal "rights, privileges, or immunities" violated under "color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983; *see generally Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357 (2025). Thus, for a plaintiff to have a cause of action under Section 1983, he must not only allege a violation of federal law but a violation of his "individual federal *rights*." *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 180 (2023) (emphasis added); *see also Carter v. Greenhow*, 114 U.S. 317, 323 (1885).

Preemption challenges under the Supremacy Clause cannot be brought under Section 1983 because the Supremacy Clause does not create any substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 612–615 (1979). Standing alone, the Supremacy Clause merely provides a rule of decision for when state and federal laws collide. *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324 (2015). The statute Wallace relies on for his preemption claim—8 U.S.C. § 1189—does not create an individual federal right either. It does not use "rights-creating terms" and simply gives powers to the executive branch. *Medina*, 606 U.S. at 368 (cleaned up).

## II. Mr. Wallace Has Failed to State a Claim on Any Count

### A. Mr. Wallace's First Amendment Claim Fails

Mr. Wallace claims his First Amendment rights were violated when Governor Abbott declared that CAIR and the Muslim Brotherhood are terrorist organizations, ECF No. 1 ¶ 76, even though a federal district court found there was "ample evidence" they coordinated with Hamas, *Holy Land Found.*, 2009 WL 10680203, at *7. Although he was not named in the Proclamation (or covered by it), he asserts that the Proclamation prohibits him from "representing clients in Palestinian, Arab, and Muslim communities," deters "him from speaking about the Muslim Brotherhood, CAIR, Palestinian advocacy, or related topics," and makes "it effectively impossible for individuals and organizations in Palestinian, Arab, and Muslim communities—including those affiliated with CAIR or characterized as connected to the Muslim Brotherhood—to engage in protected advocacy in Texas." ECF No. 1 ¶ 77. Mr. Wallace's bank-shot First Amendment claim fails for multiple reasons.

To begin with, the Proclamation does not directly regulate speech at all. It labels CAIR and the Muslim Brotherhood as terrorists because of their *conduct* over the last 30 years. *See Holy Land Found.*, 2009 WL 10680203, at *7; *cf. Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 735 (D.C. Cir. 2007); *TikTok Inc. v. Garland*, 604 U.S. 56, 67-69 (2025). It does not force them or anyone else not to speak. The purchasing of property or engaging in a public nuisance are not expressive acts. *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011) (explaining that "restrictions on protected expression are distinct from restrictions on economic activity or, more generally, on nonexpressive conduct").

The Proclamation also does not restrict protected speech of individuals like Mr. Wallace, who are not members of CAIR or the Muslim Brotherhood. Mr. Wallace believes that because he

intends to associate with (unidentified) individuals who themselves associate with CAIR or the Muslim Brotherhood, he may not speak in support of those groups. *See* ECF No. 1 ¶¶ 61-64. But Mr. Wallace's theory misunderstands the Proclamation. First, the designation as a Foreign Terrorist Organization only applies to 1) CAIR and the Muslim Brotherhood themselves, and 2) individuals who are "promoting or aiding their *criminal activities*." Proclamation at 4 (emphasis added); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 166 (D.C. Cir. 2003) ("[T]here is no First Amendment right nor any other constitutional right to support terrorists."). Simply saying good things about CAIR or the Muslim Brotherhood, without coordinating with those entities to promote their "criminal activities," does not violate the Proclamation. Proclamation at 4. The Proclamation is thus substantially narrower than the designation the Supreme Court upheld in *Holder v. Humanitarian Law Project*, 561 U.S. 1, 8 (2010), which criminalized providing material assistance to a designated entity's *noncriminal* operations. Mr. Wallace is free to speak on whatever topics he likes, and the only thing stopping him is his own misunderstanding of the Proclamation.

The retaliation aspect of Mr. Wallace's First Amendment Claim also fails. To state a claim for First Amendment retaliation, the Plaintiff must demonstrate that his protected speech was the but-for cause of the action. *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019). And to demonstrate but-for cause, a plaintiff must show that the relevant official lacked probable cause to take the relevant action. *Id.* The probable cause that CAIR and the Muslim Brotherhood fit the definitions in the Proclamation is obvious. *Cf. Holy Land Found.*, 333 F.3d at 162 ("[T]he government may decide to designate an entity based on a broad range of evidence."). Based on wiretapped conversations, the Department of Justice concluded that CAIR was an unindicted coconspirator to fund Hamas. *Holy Land Found.*, 2009 WL 10680203, at *7. And a federal court agreed that there was "ample evidence" to support that conclusion. *Id.*

Finally, Mr. Wallace claims that the Proclamation violates the First Amendment because it targets "a Muslim-identified theological movement" and "a Muslim-identified organization." ECF No. 1 ¶ 76. But he does not allege that the Proclamation targeted those entities *because* they are Muslim groups. To the contrary, it targets them because they are affiliated with Hamas, which is a terrorist group. *Redesignation of Foreign Terrorist Organization*, 66 Fed. Reg. 51088–51090 (Oct. 5, 2001). The fact that the Proclamation has an impact on groups that are Muslim does not turn it into unconstitutional viewpoint discrimination. *McCullen v. Coakley*, 573 U.S. 464, 480 (2014) ("[A] facially neutral law does not become content based simply because it may disproportionately affect speech on certain topics."); *Hill v. Colorado*, 530 U.S. 703, 724 (2000).

**B. Mr. Wallace's Equal Protection Claim Fails.**

For these same reasons that the First Amendment argument about targeting Muslim groups fails, the Proclamation does not violate the Equal Protection Clause. *See* ECF No. 1, Count III. That Clause only prohibits classifications that are either explicitly based on a proscribed class or motivated by animus against that class. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Generally applicable rules that incidentally burden one religious group more than another are not proscribed under the First Amendment, *see Employment Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872 (1990), and plaintiffs cannot simply "[re]phrase[]" a First Amendment argument into an Equal Protection argument, *Prince v. Massachusetts,* 321 U.S. 158, 170 (1944); *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014).

**C. The Proclamation Does Not Violate Mr. Wallace's Due Process Rights.**

Mr. Wallace also contends that designating CAIR and the Muslim Brotherhood a Foreign Terrorist Organization and Transnational Criminal Organization violates his due-process rights, primarily by prohibiting him from acquiring real property in Texas. He fails to state a claim.

First, the designation of CAIR and the Muslim Brotherhood as Transnational Criminal Organization does not deprive Mr. Wallace of *any* property interest. He has not pleaded that he possesses real property in Texas or intends to acquire real property in Texas. Nor does the designation of those entities deprive Mr. Wallace of any property interest. As explained above, that designation pronounces Governor Abbott's determination about the dangers posed by non-parties to this case. That determination is only actualized by other state officers tasked with seeking relief in court. Any entity who is believed to be a Foreign Terrorist Organization will necessarily get a full day in court before any deprivation occurs. Because no property of Mr. Wallace's has been taken, he cannot state a claim under the Due Process Clause.

Mr. Wallace also claims that he was deprived of a "[l]iberty interest in avoiding stigmatization," ECF No. 1 ¶ 85, but he was not even named in the Proclamation, *cf. Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006). So there is no so-called stigma to begin with. Even if there were, "damage to reputation alone" is not cognizable under the Due Process Clause. *Id.* And to the extent that Mr. Wallace claims a substantive due process liberty interest in association, speech, and petition, those interests are already covered by the First Amendment and fail for the reasons explained above.

### D. The Proclamation is Not Preempted by Federal Law.

Mr. Wallace contends that the Immigration and Nationality Act preempts Texas from designating CAIR and the Muslim Brotherhood as Foreign Terrorist Organizations.[1] But both his field-preemption and conflict-preemption arguments contradict well-established precedent.

---

[1] Mr. Wallace does not argue that the designation as a Transnational Criminal Organization is preempted.

"[I]n all pre-emption cases," federal courts presume that state statutes are not preempted. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quotation marks omitted). That presumption is even stronger when the state law falls within the state's traditional "police powers," *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). The designation as a Foreign Terrorist Organization addresses the remedies against entities that create a nuisance within Texas's borders, which is a classic example of a police-power regulation. *See Hadacheck v. Sebastian*, 239 U.S. 394, 410-11 (1915) (concluding that it was within the "police power" to regulate a public nuisance).

Because the presumption against preemption applies, there must be "an unambiguous congressional mandate" that preempts the designation. *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 146-47 (1963). And because Mr. Wallace attempts to avail himself of the "disfavored" doctrine of field preemption, he faces even a greater burden. *Nat'l Press Photographers Ass'n. v. McCraw*, 90 F.4th 770, 796 (5th Cir. 2024). There must exist "a framework of regulation 'so pervasive ... that Congress left no room for the States to supplement it.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Rice,* 331 U.S. at 230).

The other disfavored doctrine that Mr. Wallace attempts to avail himself of is the doctrine of "facial" invalidity. *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) ("[F]acial challenges are disfavored."). Mr. Wallace's argument is that Texas cannot label any entity a Foreign Terrorist Organization. To state a claim, Mr. Wallace must show that "no set of circumstances" exists in which the Proclamation "would be valid," *United States v. Salerno*, 481 U.S. 739, 745 (1987); *MetroPCS Cal., LLC v. Picker*, 970 F.3d 1106, 1122 (9th Cir. 2020) (applying *Salerno* to a preemption challenge). And all Governor Abbott needs to do to prevail is "identify a possible set of . . . conditions" in which the Proclamation is "not in conflict with federal law." *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 593 (1987).

With respect to field preemption, the Immigration and Nationality Act does not come close to "clear[ly]" creating a "framework of regulation" that implicitly leaves "no room" for Texas to designate Foreign Terrorist Organizations. *Arizona*, 567 U.S. at 399 (quotation marks omitted). Mr. Wallace's main contention is that because the INA allows the federal government to designate foreign organizations as a "Foreign Terrorist Organization," 8 U.S.C. § 1189, it implicitly precludes states from doing the same.

The "field" that Texas is regulating through its Foreign Terrorist Organization designation, however, is vastly different from the one that the federal government is regulating. To begin with, the Texas statute only creates remedies if a designated entity creates a public nuisance within Texas. *See* TEX. CIV. PRAC. & REM. CODE § 125.065. The federal designation, by contrast, criminalizes association with the designated entity and allows for freezing of its assets. 8 U.S.C. § 1189(a)(2)(C). The two designations, both in substance and in punishment, operate in different areas. One is concerned with nuisances by a wide variety of foreign actors within Texas, and the other is concerned with specific terrorist activities anywhere in the country and punishes anyone associated with them under the federal criminal law. *Id.*

And although the relevant Texas statute uses the same phrase as the INA, "Foreign Terrorist Organization" is a defined term under Texas law that has a different scope than the narrow federal definition. The federal designation requires that the entity be a "foreign organization," engage in specifically defined "terrorist activity," and "threaten[] the security of United States nationals or the national security of the United States." *Id.* § 1189(a)(1). The Texas defined term of "Foreign Terrorist Organization," however, contains a wholly different set of elements. It requires that the entity operate "at least partially outside the United States," "engage in criminal activity," and "threaten the security of this state or its residents." TEX. PENAL CODE § 71.01(e).

17

Despite the label of "terroris[m]," *id.*, the Texas designation targets foreign criminal organizations more broadly, not just those who engage in classic terrorist activities. *Cf.* 22 U.S.C. § 2656f(d) (defining "terrorism" for the purposes of federal law); 8 U.S.C. § 1182(a)(3)(B) (defining "terrorist activities" for purposes of federal law). Indeed, a primary target for the Texas designation is "drug cartel[s]," even though the statute contemplates going beyond them. TEX. PENAL CODE § 71.01(e).

For Mr. Wallace to prevail on his facial challenge to the Governor's ability to designate Foreign Terrorist Organizations, he must demonstrate that the INA prohibits Texas from applying additional remedies against international organizations "who engage in criminal activity" that threatens Texas or its citizens. *Id.* But the INA's terrorist-designation procedure covers only a small slice of "criminal activity," so it cannot possibly preempt the entire field of international "criminal activity." *Id.*; *Arizona*, 567 U.S. at 399. For example, if an entity that operates in multiple countries engages in drug smuggling, human trafficking, immigration fraud, or charitable fraud, it would likely fall under the Texas definition of a Foreign Terrorist Organization. But the INA provisions that Mr. Wallace relies on simply have nothing to say about these crimes.

Nor does Texas's designation of CAIR and the Muslim Brotherhood raise an issue of conflict preemption. Contrary to Mr. Wallace's allegations, it does not "contradict" the federal scheme. Because Texas's designation only applies for the purposes of Texas law, the two designations can coexist without conflict. *See English v. General Elec. Co.,* 496 U.S. 72, 79 (1990). Nor does the Proclamation undermine the "federal government's deliberate choice not to designate the Muslim Brotherhood as an FTO." ECF No. 1 ¶ 112. As explained above, the state and federal definitions of a Foreign Terrorist Organization are vastly different, so the fact that Governor Abbott believes CAIR and the Muslim Brotherhood fall within the Texas definition does not mean he is second-guessing the putative decision of the federal government not to list them under federal law.

And even if the federal and state designations did completely overlap, that is not a reason to conclude that they conflict. *Zyla Life Scis., LLC v. Wells Pharma of Houston, LLC*, 134 F.4th 326, 333 (5th Cir 2025) ("States may have a legitimate interest in punishing or providing redress for wrongs even if federal law already does so.").

### E. The Proclamation is not a Bill of Attainder.

"A bill of attainder is a legislative act which inflicts punishment without a judicial trial." *Cummings v. State of Missouri*, 4 Wall. 277, 323 (1866); *Nixon v. Admr. of Gen. Servs.*, 433 U.S. 425, 475 (1977) (describing the Clause as a prohibition on "legislative punishment"). The Proclamation is an executive, not a "legislative act." *Cummings,* 4 Wall at 323. The underlying statutes were of course legislative acts; but as generally applicable statutes, they were obviously not bills of attainder. A statute can be a Bill of Attainder only if it identifies the subject by name or applies to "easily ascertainable members of a group." *United States v. Brown*, 381 U.S. 437, 449-50 (1965) (cleaned up). Mr. Wallace argues that the problem with the statutes is that they are too broad and vague in their scope, which is the exact opposite of a Bill of Attainder. ECF No. 1 ¶ 6. There can also be no argument that Mr. Wallace himself has been attained. He is not named in the statutes or Proclamation, much less specifically punished.

### F. The Proclamation Does Not Violate the Commerce Clause

Mr. Wallace claims that the Proclamation denies him the right to travel under the Commerce Clause. ECF No. 1, Count VI; *cf. Atty. Gen. of N.Y. v. Soto-Lopez*, 476 U.S. 898 (1986). But neither the Proclamation nor the statutes it implements restrict interstate travel in any way. Mr. Wallace remains free to enter Texas (even though he has not pleaded any concrete plans to do so). The substance of Mr. Wallace's right-to-travel argument is essentially that the Proclamation would subject him to penalties in Texas, and the only way he could avoid those penalties would be to

avoid traveling to Texas. But that kind of indirect-effects argument has never been accepted by a federal court, and it would lead to preposterous consequences. *Cf. Cramer v. Skinner*, 931 F.2d 1020, 1031 (5th Cir. 1991). Taken to its logical conclusion, it would permit a person to invalidate state laws he did not like simply by claiming his right to travel to that state was impeded by the law he dislikes.

### G. The Proclamation Does Not Violate Texas Law

The Governor is plainly immune from suit under *Pennhurst*, but even if he were not, Mr. Wallace has still failed to state a claim under Texas law. The arguments under the Texas Constitution are largely duplicative of the ones under federal law, and they should fail for the same reasons. No potential differences between the Texas and federal constitutions, *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 293 (1982), are relevant to this case. Likewise, Texas Administrative Procedure Act does not govern the proclamation because 1) the designation as a Foreign Terrorist Organization and a Transnational Criminal Organization is not a "statement of general applicability," TEX. GOV'T CODE § 2001.003(6)(A), and 2) the specific procedural requirements to name a Transnational Criminal Organization govern over the general Texas APA requirements and were satisfied here, *cf. Marble Falls Indep. Sch. Dist. v. Scott*, 275 S.W.3d 558, 563 (Tex. App.—Austin 2008, pet. denied) (discussing when the Texas APA applies), and 3) the designation as a Foreign Terrorist Organization is not legally binding on Mr. Wallace, TEX. GOV'T CODE § 2001.003(6).

### CONCLUSION

This Court should dismiss Mr. Wallace's complaint.

Dated: March 27, 2026

Respectfully submitted,

TREVOR W. EZELL
*General Counsel*
Tex. State Bar No. 24109849
Caleb Gunnels
Deputy General Counsel
Tex. State Bar No. 24109959
Jason Bramow
Deputy General Counsel
Tex. State Bar No. 24101545
OFFICE OF THE GOVERNOR OF TEXAS
P.O. Box 12428
Austin, TX 78711
Tel: (512) 463-3329
Fax: (512) 463-1932
trevor.ezell@gov.texas.gov

*/s/ Charles J. Cooper*
Charles J. Cooper (Pro Hac Vice)
John D. Ramer (Pro Hac Vice)
Bradley L. Larson (Pro Hac Vice)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
jramer@cooperkirk.com
blarson@cooperkirk.com

*Counsel for Defendant Greg Abbott, in his official capacity as Governor of Texas*

**CERTIFICATE OF SERVICE**

On March 27, 2026, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

/s/ *Charles J. Cooper*
Charles J. Cooper