**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**Austin Division**

| | |
|---|---|
| **JONATHAN WALLACE,**<br><br>*Plaintiff,*<br>v.<br><br>**GREGORY WAYNE ABBOTT,**<br>in his official capacity as Governor of the State of Texas;<br>**KEN PAXTON,**<br>in his official capacity as Attorney General of Texas; and<br>**FREEMAN F. MARTIN,**<br>in his official capacity as Director, Texas Department of Public Safety<br><br>*Defendants.* | Case No. 1:25-cv-2030-DAE<br><br>HON. DAVID A. EZRA |

**DECLARATION OF JONATHAN WALLACE**
**IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

Jonathan Wallace declares under penalty of perjury under 28 U.S.C. § 1746 as follows:

## I. IDENTITY, COMPETENCE, AND PURPOSE

1. I am the Plaintiff in this action. I am admitted *pro hac vice* in this matter and appear together with co-counsel of record.

2. I am over the age of eighteen and competent to testify. I have personal knowledge of the facts stated in this Declaration, except where I state that a fact is based on information reported to me or on my understanding, in which case I identify it as such. Where I describe a document, it is a true and correct copy of a document that I sent, received, or personally reviewed, and it is attached as the exhibit identified.

3. I am an attorney admitted to practice in the State of New York since 1981. I am also admitted to the Eastern, Southern, and Northern Districts of New York; the Second,

Third, and DC Circuit Courts of Appeal; and the US Supreme Court. I am seventy-two years old and reside in Amagansett, New York.

4. I submit this Declaration in opposition to the motion to dismiss filed by Governor Abbott (Dkt. 39) and the motion to dismiss filed by Attorney General Paxton and Director Martin (Dkt. 38). Both motions challenge this Court's subject matter jurisdiction. Among other things, Defendants characterize my intention to travel to Texas as vague and purported, dispute whether the Proclamation has had any effect upon me, and contend that any injury I claim was caused by my own choices or by third parties. Among other things, Defendants dispute whether I genuinely intend to travel to Texas, whether the Proclamation has had any effect upon me, and whether any injury I claim was caused by anything other than my own choices. Though, at the motion to dismiss stage, the Court must accept the factual allegations as true, I offer this Declaration and its exhibits to further establish those facts.

## II. MY LAW PRACTICE AND MY CLIENTS

5. For approximately fifteen years my practice has concentrated on civil rights and First Amendment litigation. Since my semi-retirement from paid practice, my professional work has principally involved representing individuals penalized in connection with pro-Palestinian speech, anti-Zionist advocacy, or membership in Palestinian, Arab, and Muslim communities.

6. This Declaration does not describe any client, any client matter, or any professional relationship with any organization named in the Proclamation. I do not rely on any such relationship to establish my standing in this action. My standing rests on my own expressive activity, my own expenditures, and the conduct of the State of Texas toward me personally, each of which is described below and documented in the accompanying exhibits.

7. I explain below why this Declaration omits any description of my clients, because the reason for that omission is itself a consequence of the Proclamation.

8. In Winter 2025, I asked the individuals I represent in matters of this kind whether they would consent to being described in this litigation. I asked first whether they would consent to being identified by name. I then asked whether they would consent to being described in a manner that omitted their names entirely—by role, region, and type of matter only. Each declined both requests.

9. I understand they declined because they believe that any description of their circumstances, however general, could permit them to be identified, and because they understand that the identity of any person described in this litigation could be sought in discovery. They are aware that the Office of the Attorney General of Texas would receive any such disclosure, and that the Attorney General is a Defendant in this action.

10. I have separately been asked not to describe my professional dealings with organizations named in the Proclamation. Those organizations are themselves the subjects of the designation I challenge here, and at least one of them is presently litigating against Governor Abbott in this District. *See CAIR v. Abbott*, No. 1:25-cv-01878 (W.D. Tex. filed Nov. 20, 2025). I have honored that request.

11. As a member of the New York bar I am bound by Rule 1.6 of the New York Rules of Professional Conduct, which prohibits me from knowingly revealing information a client has requested be kept confidential or whose disclosure would be likely to be detrimental to the client. I do not have informed consent to disclose this information in any form, and I therefore do not.

12. I have not asked the Court to accept any factual assertion about the identity of any client or the substance of any client matter, and I ask that the pending motions be decided without reference to either.

## III. MY OWN ADVOCACY CONCERNING THE MUSLIM BROTHERHOOD AND THE PROCLAMATION

13. Independent of the representation of any client, I engage in public advocacy in my own name concerning the Proclamation and the organizations it designates.

14. I maintain and publish a weblog at https://www.spectacle.org/, on which I have written about First Amendment and civil liberties subjects since 1995, at a rate of approximately a post per month. The site receives approximately 600 readers per month.

15. I have prepared literature that I intend to distribute in Austin, Texas in September 2026. That literature argues, in substance, that the Muslim Brotherhood is not a terrorist organization, that the State of Texas was wrong to designate it as one, and that the Proclamation is unconstitutional. I also intend to distribute copies of the First Amended Complaint in this action.

16. I intend to distribute that literature on the grounds of the Texas State Capitol, and on the public sidewalk in front of the office of Attorney General Paxton at 300 W. 15th Street, Austin, TX 78701, on the dates described in paragraphs 47 through 51 below.

17. I have read the Proclamation. As I understand it, the Proclamation and the Texas statutes it invokes reach not only the designated organizations themselves, but also persons who are their members or agents and persons who promote or aid them.

18. I intend to promote, publicly and by name, the position that the Muslim Brotherhood should not be treated by the State of Texas as a terrorist organization. I do not know whether Texas officials will regard that advocacy as promoting a designated

organization within the meaning of the Proclamation and the statutes it invokes. No official of the State of Texas has told me that it will not. Neither Defendants' motions nor any communication I have received from any Defendant states that my intended advocacy falls outside the Proclamation's reach.

19. I bring this action solely in my individual capacity and solely to vindicate my own constitutional rights. I do not sue on behalf of the Muslim Brotherhood, CAIR, my clients, or any other person or entity, and I seek no relief that runs to them.

## IV. INJURIES I SUSTAINED BEFORE FILING THIS ACTION ON DECEMBER 11, 2025

20. Between November 18 and December 11, 2025, I drafted but did not publish posts concerning CAIR, the Muslim Brotherhood, and the Proclamation. I have still not published them. I withheld them because I concluded that publishing advocacy in defense of CAIR and the Muslim Brotherhood exposed me to a realistic risk of investigation, of inclusion on a State list, and of referral to law enforcement.

21. Before December 11, 2025, several professional contacts with whom I had worked as co-counsel, represented, or partnered with raised concerns with me about continuing our professional association in light of the Proclamation. Specifically, one attorney, two grassroots organizations, and an individual client.

22. Each of the injuries described in this Section occurred before I filed this action on December 11, 2025.

## V. FIRMSPACE REFUSED TO RENT ME OFFICE SPACE IN AUSTIN

23. I continued to seek a professional base in Austin.

24. In early May 2026, my co-counsel in this action, Abdel-Rahman Hamed, Esq., telephoned Firmspace on my behalf on several occasions to inquire about renting a satellite

office in Austin. Firmspace is a company that provides private offices and conference facilities marketed to legal professionals, located at 500 W. 2nd Street, Suite 1900, Austin, Texas. I did not participate in those calls and I was not present for them. The account set out in paragraphs 25 and 26 below is based on what Mr. Hamed reported to me at the time, and on Firmspace's written response to Mr. Hamed, a true and correct copy of which is attached as Exhibit A.

25. Mr. Hamed reported to me that during one of those inquiries the Firmspace receptionist asked about the nature of the work we intended to conduct from the space, and that he answered her candidly. He did not recall the precise words used, and I do not recall them either. But as Mr. Hamed reported it to me, he conveyed (a) that our office had filed a lawsuit challenging the terrorism designations of the Council on American-Islamic Relations ('CAIR') and the Muslim Brotherhood; (b) that we were seeking office space to serve as a base while that case continued to be litigated; and (c) that the space would be used in connection with organizing support around the case.

26. As Mr. Hamed further reported to me, the subject matter of the litigation was specifically identified to the receptionist—that the case concerned the designation of CAIR and the Muslim Brotherhood as terrorist organizations—and that disclosure was made before Firmspace made any decision regarding our inquiry, for the purpose of being transparent and of ensuring that my work in Austin would not be interrupted. Firmspace's written response is consistent with that account. Mr. Kane thanked Mr. Hamed 'for being transparent with us about the nature of your work while you will be in Austin,' wrote '[w]e appreciate the context,' and declined based on the prospect of 'outside attention connected to the matter.' Ex. A.

27. Specifically, on Thursday, May 21, 2026, at 11:24 a.m., my cocounsel received an email from Kenny Kane, who identified himself as the Chief Executive Officer of Firmspace from the address kenny@firmspace.com. A true and correct copy is attached as **Exhibit A**. It reads in full:

> Hi Abdel-Rahman,
> Thank you for being transparent with us about the nature of your work while you will be in Austin. We appreciate the context.
> After reviewing internally, we do not believe Firmspace would be the best fit if there is any expectation of media coverage, press activity, interviews, demonstrations, or other outside attention connected to the matter while you are using the space. Our obligations to our members require us to maintain a private, secure, and disruption-free professional environment, and we have to be especially careful with any use case that could create visibility or operational impact beyond a typical office booking.
> This is not a judgment on the legal matter or the parties involved. It is simply an operational decision based on the nature of our space and our commitments to our members.
> If your need is strictly for private office use with no media, press, client traffic, or public-facing activity at the location, we may be able to continue the conversation. Otherwise, we would likely not be the right environment for this particular need.
> Thank you again for your transparency and understanding.
> Kenny Kane, MBA / CEO / (o) 512.827.0841 / Firmspace

28. Mr. Kane's email refers to "the nature of your work," to "the context" provided, and to "outside attention connected to the matter." I understood each of those references to be to the subject Mr. Hamed disclosed to Firmspace before the decision was made, as described in paragraphs 25 and 26: this lawsuit and its challenge to the designation of CAIR and the Muslim Brotherhood as terrorist organizations. Mr. Kane also wrote that the decision "is not a judgment on the legal matter or the parties involved."

29. I understood Mr. Kane's email to mean, and it states, that Firmspace would not rent me space for the work I had described, and would consider doing so only on the

condition that my use be "strictly for private office use with no media, press, client traffic, or public-facing activity at the location."

30. That condition would have required me to give up activity central to my work and to my rights. It would have barred me from speaking with reporters about this case, from giving interviews, from meeting clients at the office, and from any activity Firmspace regarded as public-facing. The condition excluded even ordinary client traffic—that is, meeting with clients—which is among the most routine uses to which any lawyer puts professional office space.

31. I was unwilling to accept that condition. I was not prepared to surrender the ability to speak publicly about this case, to be interviewed about it, or to meet with clients, as the price of renting an office in Austin. I did not pursue the conversation on those terms, and Firmspace did not rent me space.

32. I also contacted other local attorneys and community organizers seeking leads on providers of office space in Austin. None responded positively to my inquiry.

33. I have not obtained office or conference space in Austin. During the visit described in paragraphs 47 through 51 below, I will have no professional facility in which to hold meetings, give interviews, or work. As to Firmspace, I did not abandon the effort; my inquiry was declined.

## VI. THE STATE PRESERVATION BOARD HAS NOT ANSWERED FIVE REQUESTS FOR A PERMIT APPLICATION

34. I intend to distribute the literature described in paragraph 15 on the grounds of the Texas State Capitol during my visit to Austin in September 2026. Because of my age and health, described in paragraph 52 below, I sought to do so from a seated position at a folding

table. I understand that this requires a grounds use permit from the Texas State Preservation Board.

35. On August 11, 2026, I sent an email to the Texas State Preservation Board at Capitol.Events@tspb.texas.gov. A true and correct copy is attached as **Exhibit B**. It read:

> Could you please forward me a grounds use application? This would be in connection with setting up a folding table to distribute First Amendment protected political advocacy literature on the Austin statehouse grounds. I would like to do so on September 9, 11, and 14th. Thank you, I look forward to hearing from you.

36. I received no response to that email.

37. On August 18, 2026, and again on August 19, 2026, I telephoned the State Preservation Board at 512-463-3051. On each occasion I left a detailed voice message for an individual whose recorded greeting identified him as Robert Davis. In each message I stated my name and my telephone number, and stated that I was requesting a copy of the application for a tabling permit.

38. Neither call was returned.

39. On August 20, 2026, I telephoned the same number a third time. On that occasion I stated specifically that I sought a tabling permit in order to inform the public about this case, *Wallace v. Abbott*, and to explain why I believe it is unconstitutional, unlawful, and unjust for the State of Texas to designate CAIR and the Muslim Brotherhood as terrorist organizations.

40. That call was not returned.

41. Also on August 20, 2026, I sent a letter to the State Preservation Board by certified mail, again requesting the application for a tabling permit at the Texas State Capitol, and again explaining that its purpose was First Amendment-protected advocacy against the

designation of CAIR and the Muslim Brotherhood. A true and correct copy of the letter is attached as **Exhibit C**, and the certified mail receipt is attached as **Exhibit D**.

42. As of the date of this Declaration I have received no response of any kind to any of these five communications: the email of August 11, the voice messages of August 18 and August 19, the telephone call of August 20, and the certified letter of August 20.

43. I have never been told that my request is denied. I have never been told what standards govern the decision, when a decision will be made, who makes it, or whether any review or appeal is available. I have received no answer at all.

44. The State Preservation Board maintains a webpage at https://tspb.texas.gov/plan/events/requests.html. I reviewed that page on August 14, and a true and correct copy as it then appeared is attached as **Exhibit E**. It states:

> The State Preservation Board events program operates in accordance with Government Code Chapter 2252, therefore, does not enter into agreements with organizations prohibited by the State of Texas. These include foreign terrorist organizations and others identified and posted by the Comptroller's Office per Government Code Section 2252.153.

45. I have reviewed Texas Government Code § 443.004(a), which provides that "[t]he governor is chairman of the board." The State Preservation Board's own website likewise identifies Governor Abbott as its chairman; a true and correct copy of that page as I reviewed it on August 14 is attached as **Exhibit F**.

46. I told the Board, in my telephone call of August 20 and in my certified letter of the same date, that the purpose of my requested permit was advocacy against the State of Texas's designation of CAIR and the Muslim Brotherhood as terrorist organizations. The Board's published policy states that it does not enter into agreements in connection with foreign terrorist organizations or with persons identified under Government Code § 2252.153.

I do not know whether the Board's silence reflects a determination that I am ineligible, a determination not yet made, or no determination at all. I have asked five times and received no answer. I do not know what standard I am being measured against, and I have no means of finding out.

## VII. MY TRAVEL TO AUSTIN, SEPTEMBER 8–16, 2026

47. I have purchased round-trip airfare between New York City and Austin, Texas, departing September 8, 2026 and returning September 16, 2026. A true and correct copy of the itinerary and receipt is attached as **Exhibit G**. The fare was $568.81 and is nonrefundable.

48. I have reserved a room at the Holiday Inn located at 4892 U.S. Highway 290 West, Austin, Texas, for the nights of September 8 through September 15, 2026. A true and correct copy of the reservation confirmation is attached as **Exhibit H**. The cost is $150 per night and the reservation is nonrefundable. I will travel from the hotel to the Capitol grounds each day I advocate.

49. During that visit I intend to distribute literature about the Muslim Brotherhood, and copies of the First Amended Complaint, on the grounds of the Texas State Capitol and on the public sidewalk in front of the office of Attorney General Paxton.

50. I will continue to press my request for a tabling permit so that I may distribute this literature seated at a table rather than standing.

51. If no permit is issued, I intend to hand out the literature standing, for as long as I am physically able to do so on each day.

52. I am seventy-two years old. I have been diagnosed with aortic dilation and coronary artery disease. Standing for extended periods in the Texas heat in September

presents a genuine risk to my health. Whether I am permitted to sit at a table materially affects how many hours in a day, and how many days, I am able to advocate.

53. In the 1990s I traveled to Austin as often as one week per month, and developed an attachment to the city that at one time led me to consider relocating there.

## VIII. THE EFFECT OF THE PROCLAMATION ON ME

54. I sought to arrange for one or more people in Texas to accompany me during my advocacy in September, to record my interactions with others, or to provide a measure of personal security. For instance, on or about August 8, I asked a civil rights advocate in Austin for help or other leads, and despite expressing support for the litigation, she said she cannot help in any capacity due to fear of persecution by the Texas state government given the Proclamation.

55. This too was pleaded. FAC ¶ 45 alleges that "community and civic organizations in Texas that would typically host Mr. Wallace, sponsor him, or both have apologized for not doing so because of the Governor's Proclamation and the persecution that awaits them should they organize a seminar, workshop, know your rights session or the like."

56. Every person I asked declined. Based on what they told me, I understood that they were unwilling to be publicly associated with advocacy concerning CAIR or the Muslim Brotherhood in Texas.

57. The refusal of the individuals I represent to permit any description of their circumstances, described in paragraphs 8 through 11, is itself a change from the position before November 18, 2025. Before the Proclamation issued, I had not been asked by any of these individuals to withhold any description of their matters.

58. The Proclamation states the position of the State of Texas that the Muslim Brotherhood and CAIR are foreign terrorist organizations and transnational criminal

organizations. It was issued by the Governor, published by his office, and remains available on the State's website. I advocate publicly and by name against that designation. I understand that a reasonable person, reading the Proclamation and learning of my advocacy, could conclude that I am a person who promotes or aids a terrorist organization.

59. That is a serious matter for anyone. It is a particularly serious matter for a practicing attorney, whose livelihood depends upon professional reputation.

60. I am genuinely apprehensive about traveling to Texas on September 8. I do not know how I will be received by state employees, including police officers, or by private individuals who encounter me distributing literature in defense of organizations their Governor has declared to be terrorist organizations. I am concerned that I may be confronted, harassed, ordered to disperse, cited, or arrested for conduct protected by the First Amendment.

61. My concern is not abstract. Each of the following has in fact occurred: my Austin office inquiries were refused on the condition that I speak to no press and meet no clients; writing I completed has gone unpublished; my Texas professional relationships have deteriorated; the individuals I represent will not permit their circumstances to be described in any form; no one in Texas will stand beside me; and the state agency that controls access to the Capitol grounds, chaired by the Governor whose Proclamation I challenge, has not answered five requests for a permit application.

62. I have not stopped speaking. I intend to travel to Austin, to hand out literature at the Capitol and outside the Attorney General's office, and to continue this lawsuit. But I have done less than I would have done, in fewer places, with fewer allies, and before a smaller audience, than if the Proclamation had not issued.

## IX. EXHIBITS

| Exhibit | Description |
|---|---|
| **A** | Email from Kenny Kane, Chief Executive Officer, Firmspace, May 21, 2026, 11:24 a.m. |
| **B** | Email to Texas State Preservation Board, August 11, 2026 |
| **C** | Letter to Texas State Preservation Board, August 20, 2026 |
| **D** | Certified mail receipt, August 20, 2026 |
| **E** | Texas State Preservation Board events request webpage |
| **F** | Texas State Preservation Board webpage identifying the Governor as chairman |
| **G** | Round-trip air itinerary and receipt, September 8–16, 2026 |
| **H** | Austin lodging reservation confirmation |

63. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on August 26, 2026.

Respectfully submitted,

*/s/ Jonathan Wallace*

JONATHAN WALLACE, ESQ.
NY Bar No. 1733757
P.O. Box 728
Amagansett, NY 11930
(917) 359-6234
jonathan.wallace80@gmail.com

# Exhibit A

# Re: Firmspace Austin Day Use

From Kenny Kane <kenny@firmspace.com>

To office@hamedlaw.com

CC Firmspace Austin <austin@firmspace.com>

Date Thursday, May 21st, 2026 at 11:24

Hi Abdel-rahmn,

Thank you for being transparent with us about the nature of your work while you will be in Austin. We appreciate the context.

After reviewing internally, we do not believe Firmspace would be the best fit if there is any expectation of media coverage, press activity, interviews, demonstrations, or other outside attention connected to the matter while you are using the space. Our obligations to our members require us to maintain a private, secure, and disruption-free professional environment, and we have to be especially careful with any use case that could create visibility or operational impact beyond a typical office booking.

This is not a judgment on the legal matter or the parties involved. It is simply an operational decision based on the nature of our space and our commitments to our members.

If your need is strictly for private office use with no media, press, client traffic, or public-facing activity at the location, we may be able to continue the conversation. Otherwise, we would likely not be the right environment for this particular need.

Thank you again for your transparency and understanding.

**Kenny Kane, MBA** / CEO / (o) 512.827.0841 / Firmspace

NOTICE: This communication may contain privileged or other confidential information. If you have received it in error, please advise the sender by reply email and immediately delete the message and any attachments without copying or disclosing the contents. Thank you.

# Exhibit

# B

From: Jonathan Wallace <jonathan.wallace80@gmail.com>
Date: Tue, Aug 11, 2026 at 11:38 AM
Subject: Grounds Use application
To: <Capitol.Events@tspb.texas.gov>

Could you please forward me a grounds use application? This would be in connection with setting up a folding table to distribute First Amendment protected political advocacy literature on the Austin statehouse grounds.. I would like to do so on September 9, 11, and 14th. Thank you, I look forward to hearing from you.

--
Jonathan Wallace
I have no help to send, therefore I must go myself

# Exhibit

# C

# Exhibit

# D

# Exhibit

# E

# Capitol Event Requests

## Event Request Process

The State Preservation Board approves and schedules all Capitol events held in the public areas of the Capitol, Capitol Extension and on the Capitol Grounds. Public events must serve a public purpose by promoting the public health, education, safety, morals and general welfare of all of the state's residents.

- **Review Policies:** Please read the policies that accompany the appropriate application before submitting an Event Request.

- **Check Availability:** In order to ensure that the requested date is available, please consult the calendar online or contact the Capitol Events Coordinator. After confirmation that the date is available, you may submit the completed application and sponsorship form.

- **Paperwork:** Completed requests must include an Application as well as a Sponsorship Form from a state official sponsor. State official sponsors include the Governor, Lieutenant Governor, Speaker of the Texas House of Representatives, a Texas Senator, or a member of the Texas House of Representatives.

- **Fees and Payment:** Fees for events will be invoiced only after an event has been approved and are due prior to the event date. The State Preservation Board can only accept payments for Events via check or money order.

- **Questions?** The SPB Capitol Events Coordinator can be contacted during office hours at:

    - **Phone:** (512) 463-3051

## Locations and Rates

Event Locations Overview

# Policies and Request Forms

The State Preservation Board events program operates in accordance with **Government Code** Chapter 2252, therefore, does not enter into agreements with organizations prohibited by the State of Texas. These include foreign terrorist organizations and others identified and posted by the Comptroller's Office per **Government Code** Section 2252.153.

## Request Forms

Please contact the Capitol Events staff at (512) 463-3051 to discuss availability and obtain the Request Form to schedule special events.

Requests are taken via phone only.

# Related Content

Related event and venue request teams for SPB managed properties.

Visitors Center Facility Rentals

Bullock Museum Venue Rentals

Copyright © 2026 Texas State Preservation Board

# Exhibit

# F

# Governing Board

## Board Members



### The Honorable Greg Abbott

Governor, Chairman

Official Website



### The Honorable Dan Patrick

Lieutenant Governor, Co-Vice Chairman

Official Website







### The Honorable Dustin Burrows

Speaker of the House, Co-Vice Chairman

Official Website



### The Honorable Charles Schwertner

Texas Senate

Official Website



### The Honorable Charlie Geren

Texas House of Representatives

Official Website



### Alethea Swann Bugg

Citizen Board Member

## Board Meeting Schedule

- There are no board meetings scheduled at this time.

Copyright ⓒ 2026 Texas State Preservation Board

# Exhibit

# G

Issued: May 26, 2026

# Your trip confirmation and receipt

You can check in via the American app 24 hours before your trip and get your mobile boarding pass.

Confirmation code: **FMYYRE**

## Tuesday, September 8, 2026

**JFK** **AA 2760**

New York Kennedy

**12:26 PM**

**AUS**

Austin

**3:33 PM**

Seat: **13F**

Class: **Economy (O)**

Meals: **Food for purchase**

## Tuesday, September 29, 2026

**AUS** **AA 2292**

Austin

**6:07 AM**

Manage your trip

Confirmation code: **FMYYRE**

**JFK**

New York Kennedy

**11:00 AM**

Seat: **12A**

Class: **Economy (O)**

Meals: **Food for purchase**

**Manage your trip**

Limited-time: Earn up to 90,000 bonus miles*

Find the Citi® / AAdvantage® card that's right for you. Terms apply.

Learn more




## Your purchase

**Jonathan Wallace**

Join the AAdvantage® Program

| | |
|---|---|
| New ticket (0012346056889)<br>[$360.94 + Taxes & carrier-imposed fees $57.87] | $418.81 |
| **Total cost** | **$418.81** |

## Your payment

| | |
|---|---|
| Visa | $418.81 |
| **Total paid** | **$418.81** |

Bag information

| Checked Bag (Airport) | | Checked Bag (Online*) | |
|---|---|---|---|
| 1st bag | $50.00 | 1st bag | $45.00 |
| 2nd bag | $60.00 | 2nd bag | $55.00 |

Taxes are included, when applicable.

Maximum dimensions: 62 inches or 158 centimeters calculated as (length + width + height)
Maximum weight: 50 pounds or 23 kilograms

Bag fees apply at each Check-in location. Additional allowances and/or discounts may apply. For information regarding American Airlines checked baggage policies, please visit: Bag and optional fees

If your flight is operated by a partner airline, see the other airline's website for carry-on and checked bag policies.

*Online payment available up to 2 hours before departure.

Carry-on bags (American Airlines operated flights)

| | |
|---|---|
| **Personal item** | A small purse, briefcase, laptop bag, or similar item that must fit under the seat in front of you. |
| **Carry-on** | Maximum dimensions must not to exceed: 22" long x 14" wide x 9" tall (56 x 35 x 23 cm). |

Book a hotel » Book a car » Buy trip insurance » Vacations »




Contact us

Privacy policy

Download the American app

Download on the App Store

GET IT ON Google Play

© 2026 American Airlines, Inc. All Rights Reserved.

Expedia

# JONATHAN, you're all set for New York

Great news—your flight to New York has been booked and ticketed. Below you'll find all the important details for your upcoming trip.

American Airlines Confirmation: KPRRBG

Expedia itinerary: 73525698866033

View full itinerary

## Austin to New York

American Airlines 1070: Economy / Coach

AUS

12:44pm Wed, Sep 16

DFW

1:59pm Wed, Sep 16

Layover: 58m in Dallas

American Airlines 2434: Economy / Coach

DFW
2:57pm Wed, Sep 16

LGA
7:29pm Wed, Sep 16

JONATHAN WALLACE
AUS to DFW — Manage Seats
DFW to LGA — Manage Seats
Ticket: 0017526256295

**Free cancellation expires 24 hours after confirmation**

## Fare rules

- Seat choice for a fee
- Carry-on bag included

## Change and cancellation policy

- Change not allowed
- Non Refundable

Manage Booking

## Price details

| | |
|---|---|
| 1 traveler | $149.20 |
| **Total paid** | **$149.20** |

View receipt

Unless and otherwise specified, rates are quoted in US dollars. The total includes taxes, fees, and any Expedia charges.

## Travel with more peace of mind

Get reimbursed if you need to cancel your flight due to covered illness, delays, and more.

# Exhibit

# H

Expedia

**All set, Jonathan. Your hotel is confirmed.**

View full itinerary



Holiday Inn Express & Suites Austin SW - Sunset Valley by IHG

Expedia itinerary: 72078183996939

---

## Traveler Details

Adults, 1

4892 W Highway 290, Sunset Valley, TX, 78735 United States of America

| | |
|---|---|
| Check-in | Check-out |
| Tue, Sep 8 | Wed, Sep 16 |
| Check-in time starts at 3:00pm | 12:00pm |

---

## Accommodation details

Reserved for **Jonathan Wallace.**

You booked **1 room**.

**Standard Room, 1 King Bed**

---

**Travel confidently with the Expedia app**

Manage your plans and make trip updates on the fly - wherever the journey takes you. Explore the app

---

## Price Details

**Collected by property**

| | |
|---|---|
| 8 nights x 1 room | $1,203.00 |
| Taxes on fees | $159.51 |
| Property fee | $23.92 |

---

| | |
|---|---|
| **Total** | **$1,386.43** |
| Deposit | $128.81 |
| Due Sep 8, 2026 | $1,257.62 |