I.IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOHNATHAN WALLACE,<br><br>*Plaintiff*,<br><br>V.<br><br>GREGORY WAYNE ABBOTT, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF TEXAS, ET AL.,<br><br>*Defendants*. | CASE NO. 1:25-CV-2030-DAE |

**DEFENDANTS PAXTON AND MARTIN'S REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Ken Paxton, in his official capacity as Attorney General of Texas, and Freeman F. Martin, in his official capacity as Director of the Texas Department of Public Safety, respectfully file this Reply in Support of Defendants Paxton and Martin's Motion to Dismiss First Amended Complaint (ECF No. 38), and would show as follows:

## I. PLAINTIFF WALLACE LACKS STANDING.

Article III standing is determined based on the facts existing at the time a lawsuit is filed. *E.g., Newman-Green, Inc. v. Alfonso-Larrain*, 490 U. S. 426, 430 (1989); *Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055, 1061 (5th Cir. 1991). "As with all questions of subject matter jurisdiction except mootness, standing is determined as of the date of filing of the complaint . . . " *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005), quoting *Lujan v. Defenders of Wildlife*, 504 U. S. 555, 571-72 nn.4, 5 (1992). Thus, a party cannot "rely on events that unfolded after the filing of the complaint to establish standing." *Kitty Hawk*, 418 F.3d at 460. *See Furlough v. Cage*, 896 F.3d 382, 386 (5th Cir. 2018); *Isbell v. DM Records, Inc.*, 774 F.3d 859 (5th Cir. 2014). As a result, all of Plaintiff's allegations regarding his intended visit to "agitate" in Austin in September 2026 (and other post-filing events) are entirely irrelevant to his standing, or lack thereof.[1]

Moreover, a party cannot file a lawsuit which it has no standing to file and later rely on an amended complaint to establish its standing to sue.[2] "If there is no federal jurisdiction [in a case], it cannot be created by amendment." *Moore's Federal Practice* § 15.14[3], at 15-34 (3d ed. 1999). The Fifth Circuit has applied this principle on multiple occasions. E*.g., Fed. Recov. Servs., Inc. v. United States*, 72 F.3d 447, 453 (5th Cir. 1995); *Aetna Cas. & Surety Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986). "Rule 15 cannot cure a jurisdictional defect." *Hernandez v. Smith*, 793 Fed.

---

[1] Equally irrelevant are Plaintiff's attempts to manufacture standing by claiming that, in August 2026, he contacted a non-party state agency, the Texas State Preservation Board, to apply to hand out leaflets on the Texas State Capitol grounds later in September 2026. See Opposition at 2-3, 4. Also irrelevant is his claim that a third party named Firmspace in May 2026 declined to provide office space to Wallace when he told them his intended activities in the office might generate demonstrations, media coverage, and high client traffic. Opp. at 4-5, 15-16.

[2] Plaintiff misleadingly cites *Rockwell Int'l Corp. v. United States*, 549 U. S. 457 (2007), in an attempt to cast doubt on this red-letter law. Opp. at 7. But *Rockwell* dealt only with special jurisdictional rules applicable to False Claim Act suits and has since been superseded by statute. *See U. S. ex rel. Integra Med. Analytics, LLC v. Creative Sols. In Healthcare*, 2019 U. S. Dist. 196490, 2019 WL 5970283 (W. D. Tex. 2019) at *24 (public disclosure rule no longer jurisdictional bar). *Rockwell* doesn't change the longstanding rule applicable here as shown by the later decision in *Baisden v. I'm Ready Prods.*, 693 F.3d 491, 510 n. 19 (5th Cir. 2012), citing *Davis v. FEC*, 554 U. S. 724, 734 (2008) (standing determined as of filing of complaint).

Appx. 261, U. S. App. LEXIS 34749, 2019 WL 6210875 (5th Cir. 2019). If a court lacks subject matter jurisdiction, it lacks jurisdiction to grant leave to amend. *E.g., Lopez v. State Farm Lloyds*, 2025 U. S. Dist. LEXIS 80657 (W. D. Tex. 2025) ("[a] court without jurisdiction has no authority to act – not even to grant leave to amend or supplement").

## II. PLAINTIFF WALLACE LACKED ANY INJURY IN FACT WHEN HE FILED THIS ACTION.

Thus, the relevant inquiry for standing against AG Paxton and Director Martin here has nothing to do with the First Amended Complaint or any events in 2026. Standing depends solely on whether Plaintiff Wallace, in his Complaint filed on December 11, 2025 – twenty-three days after the Governor's Proclamation -- alleged that he had *already then* suffered a "concrete and particularized, actual or imminent" injury by reason of actions of AG Paxton and/or Director Martin. Plaintiff plainly had no such injury when he filed this suit on December 11, 2025, and the Court should dismiss this suit without prejudice as to AG Paxton and Director Martin.

To his credit, Plaintiff is forthright in describing what he claims are his injuries that "predate December 11. 2025." See Plaintiff's Opposition to Defendants Paxton and Martin's motion to Dismiss the First Amended Complaint ("Opposition" or "Opp.") (ECF No. 42), at 8-9.[3] Plaintiff asserts that "in the three weeks between the [November 18] Proclamation and the filing of the Complaint, he drafted posts concerning CAIR, the Muslim Brotherhood, and the Proclamation but did not publish them. He withheld them because he concluded that publishing advocacy in defense of the designated organizations exposed him to a realistic risk of investigation, of inclusion on a State list, and of referral to law enforcement."

[3] Also to Plaintiff's credit is this admission: "Mr. Wallace agrees that his clients' rights and injuries cannot supply his standing." Opp. at 3.

Thus, Plaintiff Wallace squarely relies for standing as of the date of his Complaint on a "self-censorship" theory, and not on any enforcement actions that he claims any Defendant took or threatened to take against him.[4]

Plaintiff's claim to "self-censorship" standing runs headlong into the longstanding principle that "standing cannot be conferred by a self-inflicted injury." *Glass v. Paxton*, 900 F. 3d 233, 238 (5th Cir. 2018), quoting *Zimmerman v. City of Austin*, 881 F.3d 378, 389 (5th Cir. 2018). The Supreme Court made it clear in *Clapper v. Amnesty Int'l USA*, 568 U. S. 398, 416 (2013): "Respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."

Plaintiff alleges that the Governor's Proclamation created a "chilling effect" on his exercise of First Amendment rights. But the Supreme Court has made it clear that this is not enough for standing. "Allegations of a subjective "chill" are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm". *Laird v. Tatum*, 408 U. S. 1, 13-24 (1972).[5] *See Crenshaw-Logal v. City of Abilene*, 436 Fed. Appx. 306, 309 (5th Cir. 2011) ("subjective self-imposed chill" not sufficient for standing).

As of December 11, 2025, was there a "concrete and particularized" harm to Plaintiff as a result of publishing his views on the Governor's November 18 Proclamation that was "certainly impending"? Of course not. For one thing, there is no evidence that the musings of a semi-retired

---

[4] Plaintiff Wallace's claim that he suffered "reputational injury" from the Proclamation is a bizarre basis for a claim against AG Paxton and Director Martin. Wallace does not claim either of them issued the Proclamation, so neither of them inflicted any supposed "reputational injury".

[5] Plaintiff unsuccessfully tries to distinguish *Laird v. Tatum* by claiming that he is "subject to the challenged regulations." Opp. at 14. But Plaintiff is not. The Governor's Proclamation does not name Plaintiff, directly or indirectly. His implausible theory that publishing posts that argue the Governor made a mistake by issuing the Proclamation might lead to criminal charges against him for "promoting" a terrorist organization is not just speculation, but far-fetched speculation that can't be taken seriously. Similarly, Plaintiff's attempt to distinguish *Clapper v. Amnesty Int'l* falls flat. Opp. at 13-14. He again imagines, contrary to reality, that the Proclamation (which does not directly or indirectly name him as an FTO or TCO) somehow carries "penal consequence" for him. It simply does not.

New York attorney regarding a Proclamation by the Governor of Texas would find any audience at all, especially halfway across the country in Texas. Second, there was ample adverse public comment from many sources regarding the Governor's Proclamation in late 2025. It resulted in -- no reaction by any Defendants at all, so far as any evidence shows. If any evidence at all exists to support Plaintiff's conclusion that his posts would have put him at "imminent" legal risk, it was Plaintiff's burden to cite it in support of his claim to standing – and he failed entirely to do so.

Plaintiff's argument that posting his thoughts on the Governor's Proclamation would have placed him at "risk" is plainly speculation and depends on an attenuated string of assumptions regarding the possible actions of independent third parties. A party may use "chilled expression" to establish standing only when "a credible threat of a policy's enforcement chills their speech or causes 'self-censorship', a threat that is 'certainly impending' and not an 'attenuated chain of possibilities" partially based on 'the decisions of independent actors." *Burnett Specialists v. Cowen*, 140 F.4th 686, 693-94 (5th Cir. 2025).[6] There was no such "certainly impending" threat of enforcement against Plaintiff when he filed the Complaint in December 2025. Plaintiff failed to carry his burden.

In *Deep South Center for Env. Just. v. United States EPA*, 138 F. 4th 310 (5th Cir. 2025), the Court stated: "Although imminence is 'a somewhat elastic concept, it cannot be stretched beyond its purpose.' *Clapper*, 568 U. S. at 564 n.22. This requirement bars claims based on injuries grounded in mere speculation." 138 F.4th at 320. But the possibility of injuries grounded in mere speculation is all Plaintiff has to offer in his claims against AG Paxton and Director Martin.

Even the conjectured reactions to Plaintiff's withheld postings wouldn't have amounted to an actual legal injury. Plaintiff imagines that publication of his postings would have created a risk of "investigation" by someone, but being the subject of an investigation is hardly a concrete and

[6] Plaintiff Wallace refers to a number of decisions of such independent third-party actors, such as Firmspace (Opp. at 4-5) and unnamed "professional contacts" who allegedly expressed "concerns" about "continuing their association with him in light of the Proclamation." (Opp. at 8). In addition to being quite vague, these claims that the Proclamation might cause third parties to inflict injury on Plaintiff attenuate any claim by Plaintiff to standing based on the Proclamation.

particularized imposition of a legal injury. Nor is Plaintiff's speculation that publication of his views on the Governor's' Proclamation might have led him to being placed on a "State list." Finally, Plaintiff's assertion that publication of his posts might have led to a "referral to law enforcement" falls far short of a legal injury required for standing. Plaintiff does not allege who he imagines would have made the "referral"; what charge the potential "referral" might have pertained to; whether or not the potential "referral" would have led to any prosecution or legal consequences for Plaintiff; or even what "law enforcement" agency Plaintiff imagines might have received the potential referral. It's all rank speculation about attenuated possible consequences and falls far short of carrying Plaintiff's burden to show standing.[7]

That conclusion is made even more certain by the fact that the Governor's Proclamation does not regulate expressive speech. The Proclamation forbids no speech whatsoever, unlike the statutes, regulations, or policies involved in self-censorship cases like *Speech First, Inc. v. Fenves*, 979 F.3d 319, 323 (5th Cir. 2020) (challenging university policies on speech, expression, and assembly) on which Plaintiff would like to rely. Instead, by naming the Muslim Brotherhood and CAIR as foreign terrorist organizations (FTOs) and transnational criminal organizations (TCO), the Governor's Proclamation has specified legal effects on those organizations under Texas law, but does not in any way *forbid any speech* by them. The lenient self-censorship standard that Plaintiff would like to invoke for his own standing applies only to statutes facially regulating expressive speech. The Governor's Proclamation is not such a regulation, so Wallace's standing argument fails for this additional reason.

Moreover, the Governor's Proclamation does not name Plaintiff Wallace, directly or indirectly. It names only the Muslim Brotherhood and CAIR, and Plaintiff Wallace does not claim to be a member of either organization. To even try to connect himself to the Proclamation, Plaintiff Wallace has to speculate that someone might view his withheld postings as "promoting or aiding" the Muslim Brotherhood and/or CAIR. See Opposition at 11. But merely arguing against the

[7] "[A]ttenuation itself provides an independent bar" [to standing]; the "causation requirement also rules out attenuated links. ". *Deep South*, 138 F.4th at 322.

correctness of the Governor's Proclamation is not even close to "promoting or aiding" a terrorist or criminal organization. That huge stretch is yet another level of attenuation that further precludes a finding that Wallace had suffered an injury in fact when he filed suit and had standing.

## III. Plaintiff Also Fails to Show Any Injury Traceable to AG Paxton or Director Martin.

But injury in fact is just the first of the three requirements for standing. Plaintiff fails also to meet the second requirement of traceability. Traceability requires a showing, at a minimum, of causation in fact. *Bay Area Unit. Univ. Church v. Ogg*, 2026 U. S. App. LEXIS 23345, 2026 WL 2209133 (5th Cir. July 31, 2026), citing *Dept. of Comm. v. New York*, 588 U. S. 752, 768 (2019). But Plaintiff Wallace cannot begin to satisfy that requirement, and doesn't try to do so.

Plaintiff's complaint is that the Governor's Proclamation inflicted injury in fact on him. But Plaintiff does not (and could not in good faith) allege that either AG Paxton or Director Martin issued the Governor's Proclamation. Thus, any claimed injury supposedly inflicted on Plaintiff Wallace by the Governor's Proclamation certainly was *not* caused by, or traceable to, either AG Paxton or Director Martrin. Nor does Plaintiff Wallace claim that AG Paxton or Director Martin otherwise had caused any injury to Plaintiff as of the date he filed this case, December 11, 2025. Plaintiff thus fails to meet the traceability requirement for standing against AG Paxton and Director Martin.

## IV. Plaintiff Failed to Show Any Injury Redressable by AG Paxton or Director Martin.

The third mandatory requirement for standing is redressability. A plaintiff must show that the court in which suit is filed may grant relief against each defendant that redresses the plaintiff's claimed injury by that defendant. Plaintiff Wallace claims that Governor Abbott's November 18, 2025, Proclamation caused self-censorship injury to him, for which he sues not only Governor Abbott, but also AG Paxton and Director Martin. Is Plaintiff's claimed self-censorship injury from the Governor's Proclamation redressable by relief against AG Paxton or Director Martin?

Of course not. Neither AG Paxton nor Director Martin issued the Governor's Proclamation. Nor can either of them rescind a word of it. Any relief directed at injury allegedly caused by the Governor's Proclamation could only be directed at Governor Abbott (although AG Paxton and Director Martin believe no such relief is warranted). Accordingly, Plaintiff Wallace fails to meet the redressability requirement for standing. For this additional reason, Plaintiff lacks standing and this action should be dismissed.

## V. PLAINTIFF'S SUIT AGAINST AG PAXTON AND DIRECTOR MARTIN IS BARRED BY SOVEREIGN IMMUNITY.

Plaintiff Wallace argues that the positions of Governor Abbott and of AG Paxton and Director Martin are fatally inconsistent. Opp. at 1-2. Plaintiff Wallace is wrong. The inconsistency instead is in Plaintiff's arguments.

Plaintiff's principal claim is that he suffered a First Amendment injury when he "self-censored" publication of his posts because of the Governor's Proclamation. Plaintiff's claim therefore is that his alleged injury was caused by the November 18 issuance of the Proclamation, and had occurred as of December 11, 2025, when he filed this suit. Plaintiff Wallace makes no allegation that AG Paxton or Director Martin issued the Proclamation or took any action to enforce the Proclamation -- or even demonstrate willingness to do so – in the three-week period before Plaintiff filed this suit.

Thus, Plaintiff Wallace cannot consistently argue that his alleged self-censorship injury was caused not by the Governor's Proclamation, but instead by some post-Complaint action of AG Paxton or Director Martin in enforcing any provisions of the Governor's Proclamation against him.[8] AG Paxton and Director Martin make sense when they point out that, when Plaintiff complains that the mere issuance of the Proclamation injured Plaintiff, that is not an injury that either AG Paxton or Director Martin caused. Nor is that claimed injury one that either AG Paxton or Director Martin can redress.

[8] Plaintiff Wallace alleges no actions by AG Paxton or Director Martin to enforce any provisions of the Proclamation against him, but only the possibility of such actions in the uncertain future.

Plaintiff Wallace misunderstands *Ex parte Young*, 209 U. S. 123, 157 (1908). That doctrine provides a "narrow" exception to sovereign immunity when a state official is engaged in "ongoing" violations of federal law. Plainly AG Paxton and Director Martin were *not* engaged in any ongoing violations of the First Amendment when Plaintiff Wallace filed this suit (or thereafter).

In the unlikely event AG Paxton or Director Martin actually ever take some legal action against Plaintiff based in part on some provision of Texas law that is violative of federal law, he might then have a plausible *Ex parte Young* argument. But that certainly has not occurred. Plaintiff cannot blame his supposed self-censorship on any actions of AG Paxton or Director Martin, but only on the Governor's Proclamation. *Ex parte Young* simply does not apply to AG Paxton or Director Martin here, and the claims against them are barred by sovereign immunity and the Eleventh Amendment.

Plaintiff details law enforcement-related duties that AG Paxton and Director Maartin have under Texas law. Opp. at 18-21. What Plaintiff Wallace somehow misses is that he makes no allegation that either AG Paxton nor Director Martin has taken any action whatsoever to enforce Texas law *against Plaintiff Wallace*. For example, Director Martin has duties under Texas law related to maintaining an "intelligence database." But that fact alone surely does *not* abrogate state sovereign immunity and make Director Martin subject to suit by someone like Plaintiff, who does not allege that Director Martin has included Plaintiff in an intelligence database or even threatened to take any action against Plaintiff of any kind. If it were otherwise, any state official could be sued by literally any plaintiff who speculates that the state official might someday take some action that affects that plaintiff.

State sovereign immunity and the Eleventh Amendment have substance, and they apply here. The "narrow" exception provided by *Ex parte Young* does not permit suit against state officials who have neither taken nor threatened any enforcement actions against a plaintiff like Plaintiff Wallace. *E.g., United States v. Abbott*, 85 F.4th 328, 334 (5th Cir. 2023);

Plaintiff Wallace throws in an argument that, even if he fails to qualify for injunctive relief, the Court should nevertheless grant declaratory relief in this case. Opp. at 22. This too is incorrect. Because Plaintiff has no standing and sovereign immunity applies, there is no subject jurisdiction on which to grant any relief, and Plaintiff's claims against AG Paxton and Director Martin should be dismissed pursuant to Federal Rule of Civil Procedure 12(h). Moreover, the Declaratory Judgment Act, 28 U. S. C. § 2201 et seq is procedural only and is not an independent source of federal jurisdiction. *Hockessin Holdings, Inc. v. Ocwen Loan Servicing, L. L. C.*, 2011 U. S. Dist. LEXIS 6224, 2016 WL 247727 (W. D. Tex. 2016) at *13, citing *Schiller v. Rogers*, 363 U. S. 666, 677 (1960). Accordingly, Plaintiff's declaratory judgment argument is devoid of merit.

Also without merit is Plaintiff's attempted invocation of the Due Process Clause and/or the Equal Protection Clause to challenge the Governor's Proclamation. Opp. at 24. But Plaintiff Wallace is not named in the Proclamation and had no right to any hearing or other "due process" before the Governor issued the Proclamation. Even if he had, that would create no claim against AG Paxton or Director Martin.

The Equal Protection claim is just as lacking in substance. Plaintiff admits that the Proclamation does not generally apply to Muslims, and that he is not a Muslim but is Jewish. *Id.* The Proclamation thus makes no classifications on the basis of religion or any other prohibited class, and the Equal Protection Clause does not apply to it. In any event, AG Paxton and Director Martin did not issue the Proclamation, and the Proclamation doesn't directly or indirectly apply to Plaintiff anyway.

Yet another claim by Plaintiff is that the Proclamation is somehow preempted by federal law, even though he "does not contend that the Supremacy Clause creates a cause of action". Opp. at 25. AG Paxton hereby incorporates his arguments against preemption set forth in this Motion to Dismiss in *CAIR, et al. v. Abbott and Paxton*, Case No. 1:25-cv-1878-ADA (W. D. Tex.) ECF No. 106, at 8-13. The relevant federal statutes do not preempt parallel state statutes expressly or by preempting the field, nor does the Proclamation create obstacles for the accomplishment of any federal purposes. And – once again – the Proclamation does not apply to Plaintiff anyway.

## CONCLUSION

For the foregoing reasons, the Court should grant the motion to dismiss as to AG Paxton and Director Martin.

Date: September 2, 2026

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**ROB FARQUHARSON**
Deputy Attorney General for Legal Strategy

**MICHAEL E. COTTON**
Chief, Special Litigation Division

/s/ *David Bryant*
**DAVID BRYANT**
Senior Special Counsel
Attorney-in-Charge
Texas Bar No. 03281500

**OFFICE OF THE ATTORNEY GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

***Counsel for the Defendants Paxton and Martin, in their respective official capacities***

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) on September 2, 2026 and that all counsel of record were served by CM/ECF.

/s/ *David Bryant*
DAVID BRYANT