**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| JONATHAN WALLACE,<br><br>*Plaintiff*,<br><br>v.<br><br>GREG ABBOTT, in his official capacity as Governor of Texas, KEN PAXTON, in his official capacity as Attorney General of Texas, FREEMAN F. MARTIN, in his official capacity as Director, Texas Department of Public Safety,<br><br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 1:25-cv-02030-DAE |

**REPLY IN SUPPORT OF GOVERNOR ABBOTT'S**
**<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

## INTRODUCTION

Jonathan Wallace is an aggrieved bystander without Article III standing. During this litigation, Wallace waited too late to amend his complaint, requested an "extension" to file that amended complaint (which he submitted later than he said he would), and now offers an untimely and over-the-limit response to the Governor's motion to dismiss—to say nothing of the improper affidavit attached to his response. Yet even considering the affidavit's claims, the Governor wins on standing, sovereign immunity, and the merits. So, this Court should grant the Governor's motion and deny leave to amend, which would be futile.

## ARGUMENT

### I. Wallace's Affidavit Is Procedurally Improper.

This Court should ignore Wallace's affidavit because Governor Abbott facially challenged the complaint, contesting only "the sufficiency of the allegations." *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016). Because the Governor did not "submit[] affidavits, testimony, or other evidentiary materials," he did not launch a factual challenge. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). Wallace says that the Governor inserted "assertions about the world" into his motion to dismiss. Pl's Opp'n to Def. Abbott's Mot. to Dismiss Am. Compl., Doc. 44 at 5 (Aug. 27, 2026) ("Opp'n"). As proof, Wallace takes issue with the Governor's describing Wallace's (a) "intentions" as "vague," (b) "reasons" as "mundane," and (c) "plan[s]" as "purported[]." *Ibid*. But those adjectives are not facts about the world; they are descriptions of the legal insufficiency of the complaint's allegations. Thus, the affidavit should be disregarded.

### II. The Governor's Motion Should Be Granted Because Wallace Lacks Standing.

Even with the help of the affidavit, Wallace persists in his failure to identify an injury in fact. *See* Gov. Abbott's Mot. to Dismiss Am. Compl., Doc. 39 at 6 (Aug. 5, 2026) ("Mot."). In his

affidavit, Wallace binds himself by arguing that his "standing rests on" his "own expressive activity," "expenditures, and the conduct of the State of Texas toward" him. Pl.'s Aff., Doc. 43 ¶ 6 (Aug. 27, 2026) ("Aff."); *see also* Opp'n at 2–3. And he describes his expression as "[l]leafleting and political advocacy on statehouse grounds" during a future trip to Austin on September 8 through 16. Opp'n at 6–7; Aff. ¶¶ 47, 49. Ultimately, he gestures at four supposed ways in which the Governor has curtailed his expression—(A) chilling (Opp'n at 3; Aff. ¶ 60); (B) future enforcement (Opp'n at 7); (C) unreceived permits (Opp'n at 4, 7); and (D) potentially denied workspace (Opp'n at 3–4, 9). None of them suffices for standing's injury in fact requirement.

**A. The Governor has not chilled Wallace from making a trip to the Capitol.**

Wallace claims to be "genuinely apprehensive about traveling to Texas on September 8." Aff. ¶ 60. Relatedly, he says that he refrained from posting about the Proclamation on his blog because he feared "investigation," "inclusion on a state list," and "referral to law enforcement." *Id.* ¶ 20; *see also* Opp'n at 3. But, for three reasons, Wallace has not been chilled by the Governor. His arguments are negated by his actions; his briefing concedes that other actors create any chill that does exist; and his subjective fears are not legally cognizable.

*First*, Wallace's conduct contradicts the claim that his trip to Texas has been chilled. Most tellingly, Wallace intended to delay responding to the Governor's motion to dismiss until September 15—a week *after* his anticipated arrival in Texas on September 8—to respond to the Governor's motion to dismiss. *See* Pl.'s Mot. for Extension of Time, Doc. 40 at 1 (Aug. 18, 2026). Clearly, he thought nothing about the *status quo* would bar his trip. Wallace's affidavit reveals he has already spent close to $2,000 (non-refundable) on (a) an eight-night hotel stay in Austin and (b) a round-trip plane ticket purchased before this Court granted him leave to amend his complaint. *See* Aff. ¶¶ 47–48, Ex. G, Ex. H; *see also* Pl.'s Mot. for Recons., Doc. 30 (Aug. 26, 2026).

*Second*, Wallace represents that other actors cause any chill he claims to feel. His response to Attorney General Paxton and Director Martin's motion to dismiss concedes that, apart from any remedy against the Governor, relief against them "redresses the chill and exposure Mr. Wallace pleads." Pl.'s Opp'n to Defs. Paxton and Martin's Mot. to Dismiss, Doc. 42 at 22 ("Opp'n to Att'y Gen. Paxton & Dir. Martin"). Wallace is not chilled at all, and certainly not by the Governor.

*Third*, Wallace's concerns about his trip and writing are legally insufficient. That is because "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13–14 (1972). Wallace cannot simply assert that he is "genuinely" chilled, Aff. ¶ 60, to create an Article III injury. Of course, this Court need not evaluate Wallace's claims that he is "genuinely apprehensive" about his trip and that he refrained from blogging since they appear only in the improper affidavit. But even if this Court does consider them, they do not plausibly establish chilling or standing.

**B. The Proclamation does not proscribe Wallace's trip to the Capitol.**

Wallace describes his suit as a pre-enforcement challenge under *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). *See* Opp'n at 7. But this theory clears none of the three *Driehaus* hurdles: (1) Wallace did not fully allege "a course of conduct arguably affected with a constitutional interest," (2) Wallace's conduct is not "arguably proscribed," and (3) Wallace faces no "credible threat of enforcement." *Driehaus*, 573 U.S. at 159, 161–64 (citation omitted).

*First*, the amended complaint lacks key allegations about Wallace's trip to the Capitol, for which his response cites only the procedurally improper affidavit. Wallace says that he "has prepared literature arguing that the Muslim Brotherhood" was wrongly designated in the Proclamation and "intends to distribute it on the Capitol grounds and on the public sidewalk outside the Attorney General's office[.]" Opp'n at 3; *see id.* at 6. The complaint never mentions

that literature or the intent to distribute it. First Am. Compl. for Declaratory and Injunctive Relief, Doc. 36 ¶ 119 (July 22, 2026) ("Am. Compl."). This Court must disregard unalleged facts.

*Second*, even taking the literature into account, the Proclamation does not "arguably proscribe[]" Wallace from distributing it at the Capitol. *Driehaus*, 573 U.S. at 162. His contrary argument misquotes the Proclamation. He says that the Proclamation covers "not only the designated organizations but 'all persons alleged to be affiliates, members, or persons *promoting or aiding* their activities.'" Opp'n at 6 (quoting Am. Compl. ¶ 4) (emphasis in original). He concludes that this includes his trip to the Capitol because he "intends to promote" an organization named in the Proclamation. *Id.* at 8. Though he purports to quote the Proclamation, Wallace misleadingly omits one word: "promoting or aiding their *criminal* activities." Am. Compl. ¶ 69 (emphasis added). Surely Mr. Wallace does not intend to aid criminal activity, which "is unprotected" by the First Amendment. *United States v. Hansen*, 599 U.S. 762, 783 (2023). And his promotion of a designated organization's *non*-criminal activities falls far short of being "arguably proscribed." *Driehaus*, 573 U.S. at 162.

*Third*, Wallace faces no "credible threat of enforcement" under the Proclamation or any law it invokes. *Id.* at 159. Wallace asserts that neither "Defendants' motions nor any communication" he has "received from any Defendant states that" his "intended advocacy falls outside the Proclamation's reach." Aff. ¶ 18; *see also* Opp'n to Att'y Gen. Paxton & Dir. Martin at 10. That is false. The Governor's motion to dismiss explicitly disclaims any intention to prosecute Wallace for protesting at the Capitol: "the Proclamation does not prohibit Mr. Wallace from writing whatever he wishes or 'agitat[ing]' on the steps of the Texas Capitol." Mot. at 7 (quoting Am. Compl. ¶ 8) (modification in original). That disclaimer amounts to "compelling contrary evidence" of any enforcement threat. *Contra* Opp'n at 8 (quoting *Woodlands Pride v. Paxton*, 168 F.4th 293,

305 (5th Cir. 2026)). He remains free to "agitate" at the Texas Capitol. Am. Compl. ¶ 8.

**C. Wallace's permit application is inapposite.**

Wallace unveils a brand-new argument against the Texas State Board of Preservation, which is not even named as a defendant. Opp'n at 4, 7. He argues the Board curtailed his speech because it has not yet responded to his request for a table during his trip to the Texas Capitol. *Id.* As his response says, Wallace does not need a permit to *stand* at the Capitol, only to set up a table. *Id.* at 12–13. Yet Wallace's permit argument fails to prove standing in five different ways: (1) it was not alleged, (2) it post-dates the amended complaint, (3) denial is not "certainly impending," (4) any injury is not redressable in this suit, and (5) any injury is not traceable to the Proclamation.

*First*, this Court should ignore Wallace's permit application argument because he never pleaded it. The amended complaint never mentions the Board or a permit application. So, this "new allegation may *not* be considered." *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 289 (5th Cir. 2006) (emphasis in original). Any new facts in Wallace's affidavit are procedurally improper in the Governor's facial attack on jurisdiction. *See Paterson*, 644 F.2d at 523.

*Second*, Wallace's permit argument does not establish standing because it post-dates his amended complaint. In the Fifth Circuit, decades-old precedent teaches that "standing is determined as of the date of the filing of the complaint." *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 460 (5th Cir. 2005) (citation omitted). Wallace filed his amended complaint on July 22, 2026. *See* Am. Compl. But according to Wallace's affidavit, he first requested a permit on August 11, 2026. *See* Aff. ¶ 42. If his permit request creates injury, it does not go to standing in this suit.

*Third*, Wallace admits that denial of his permit is not "certainly impending," as required for injury-in-fact's imminence prong. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted). Wallace does not claim that the Board denied his request, only that it has not

responded. Opp'n at 4. The silence is unsurprising given Wallace emailed his request for an application barely two weeks before filing his affidavit. *See* Aff. ¶ 42. He called only in the days leading up to his filing. *Id.* Moreover, Wallace does not allege that he has complied with all the requirements for perfecting his request, including obtaining a sponsor. *See* 13 TEX. ADMIN. CODE § 111.20(a)(4), (d)(3)(E), (d)(4). Thus, he concedes that he does not know if "the Board's silence reflects a determination that [he is] ineligible, a determination not yet made, or no determination at all." Aff. ¶ 46. Such indeterminacy does not satisfy imminence's certainty test.

*Fourth*, Wallace's suit cannot redress any harm from a permit denial even if it were certainly impending. An injury that arises from the six-member Board's inaction is not "likely" to "be redressed by judicial relief" against the Governor—the sole Board member named in this lawsuit. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Texas boards follow majority rule by default. TEX. GOV'T CODE §§ 311.013(a), 443.003(a). Further, Board regulations adopt *Robert's Rules of Order, Revised*, which use majority rule. *See* 13 TEX. ADMIN. CODE § 111.9; HENRY M. ROBERT, ROBERT'S RULES OF ORDER REVISED art. I, § 10 (4th ed. 1915), https://perma.cc/G9ML-2Z6V. The Court may not issue an order to a non-party that Wallace has never sued. And an order to the Governor alone would not redress any putative injury by the Board. *Cf. Rangel v. Boehner*, 20 F. Supp. 3d 148, 161–62 (D.D.C. 2013) (no redressability for congressional censure where plaintiff sued just six members of Congress).

*Fifth*, assuming harm from the permitting process, that injury is not "fairly traceable to the" Governor or the Proclamation. *Clapper*, 568 U.S. at 409. Wallace notes that the Board does not enter agreements with foreign terrorist organizations ("FTO"). Opp'n at 4, 12; Aff. at Ex. E. But Wallace does not allege that he is an FTO and disclaims "any professional relationship with any organization named in the Proclamation," stating that he does "not rely on any such relationship

to establish" his "standing." Aff. ¶ 6. In sum, Wallace's putative permit injury lacks the nexus with the Proclamation required to establish his standing to challenge it.

**D. Wallace's office space request is inapt.**

The permit is not Wallace's only late-breaking standing argument. He also discloses a new theory of injury from a potential denial of private workspace by a private company in a private office building. Opp'n at 3–4, 9. Like the permit theory of injury, the workspace theory fails because it was not alleged. Additionally, none of Wallace's untimely claims about the potential denial show that it was a predictable third-party response to the Proclamation. Finally, Wallace concedes (as he must) that his standing cannot arise from the private company's independent acts.

For one, Wallace never alleged the potential workspace denial, and he could have. The amended complaint omits any mention of the email from Firmspace, the workspace company. Yet he received the newly surfaced email on May 21—five days *before* he filed his proposed amended complaint on May 26. *See* Aff. ¶ 27; Mot. for Recons., Doc. 30 (May 26, 2026).

For another, Firmspace's decision resulted from its concern that Wallace would distract the company's other customers, not any fear of reprisal from Texas. In his email to Wallace, Firmspace's CEO noted the company's "obligations" "to maintain a private, secure, and disruption-free professional environment." Aff. ¶ 27. He added that this "is not a judgment on the legal matter or the parties involved." *Id.* Phrased differently, Firmspace did not care if Wallace "agitate[d]" at the Capitol, Am. Compl. ¶ 8, it only worried that he might agitate its customers.

At bottom, this Court should take Wallace at his word that Firmspace's "[t]hird-[p]arty [r]esponse[]" is "[n]ot the [s]ource of [s]tanding." Opp'n at 9. That is because Firmspace's decision is at best only a "'speculative' effect[] of government action." *Diamond Alt. Energy LLC v. EPA*, 606 U.S. 100, 112 (2025) (citation omitted). Wallace's concession makes sense given he declined

Firmspace's offer "to continue the conversation" on the condition that Wallace provide assurances that he would utilize the space "strictly for private office use." Aff. ¶¶ 27, 31.

### E. Wallace disclaims other putative injuries.

This Court should hold Wallace to his disclaimers of alleged injury arising from his professional relationships, supposed harms to the designated organizations, and any inability to acquire real property. *First*, this Court should accept Wallace's invitation to ignore his professional contacts. He "asks the Court to decide" this motion "without reference to" his clients, Opp'n at 10, and says that he does "not rely on any [professional] relationship to establish [his] standing," Aff. ¶ 6. *Second*, this Court should not consider any injury allegedly incurred by organizations mentioned in the Proclamation. Wallace makes clear that he "does not rely on third-party standing," Opp'n at 10 (cleaned up), and "asserts no rights but his own," *id.* at 2. *Third*, the Court should not find standing based on the real property restrictions in Subchapter H of the Texas Property Code. That is because Wallace concedes he "pleads no intention to acquire Texas real property," *id.* at 8–9, and that "his injury is . . . not to land," *id.* *Fourth*, and in any event, these injury theories fail on their merits, as the Governor's motion explains. *See* Mot. at 9 (third-party action); *id.* at 6–10 (third-party standing); *id.* at 7–8 (property). Thus, Wallace lacks standing.

## III. The Motion Should Be Granted Because Governor Abbott Is Immune From Suit.

Alternatively, this Court should dismiss the whole case because the *Ex parte Young* exception to sovereign immunity does not apply. *See* 209 U.S. 123, 157 (1908). Governor Abbott lacks any enforcement connection with each of three authorities Wallace cites.

*First*, Wallace claims (Opp'n at 11, 14) the Governor enforces Subchapter H of the Texas Property Code because he has the power to designate a transnational criminal organization ("TCO") under that statute, which restricts a TCO's ability to acquire property. *See* TEX. PROP.

CODE §§ 5.253, 5.254(a)(2)(A), (B). That conflates designation and enforcement. Contrary to Wallace's argument, the statute "specifically tasked" actors other than the Governor "with implementing and imposing the operative consequences" of a designation. Opp'n at 12 (citation omitted); *see* TEX. PROP. CODE §§ 5.255(c), (e), 5.258, 5.259. Assuming those enumerated enforcers could be proper defendants under *Ex parte Young*, the Governor is not among them. *United States v. Abbott*, 85 F.4th 328, 333–34 (5th Cir. 2023).

*Second*, Wallace relies on Attorney General Paxton and Director Martin's motion to argue that the Governor enforces the Proclamation "as an operative Texas instrument." Opp'n at 15. But Wallace mischaracterizes the argument. Challenging Wallace's standing, Paxton and Martin assumed *arguendo* that the Proclamation itself caused injury. Defs.' Paxton and Martin's Priority Mot. to Dismiss First Am. Compl., Doc. 38 at 7 (Aug. 5, 2026). Even if such injury existed, Paxton and Martin argued, there was no redressability as to them since they cannot rescind the Proclamation. *Ibid*. Thus, they did not suggest that the Governor is a proper *Ex parte Young* defendant; they simply argued in the alternative about an injury that does not exist. For that matter, any hypothetical injury from the Proclamation itself would not be redressed by relief against the Governor. Enjoining him to affirmatively retract the Proclamation is not a prospective "antisuit injunction to prevent an officer from engaging in tortious conduct," *Trump v. CASA, Inc.*, 606 U.S. 831, 846 n.9 (2025), which is the only proper use of *Ex parte Young*'s remedy, *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 691 n.11 (1949).

*Third*, Wallace argues that the Governor enforces the Proclamation because the "designation . . . produces . . . exclusion from the Capitol grounds." Opp'n at 12. That is wrong. As already explained, the Governor does not even enforce the state scheme, *contra id.* at 1–2, 6, 12, which state law entrusts to citizens, the Attorney General, and prosecuting attorneys, Mot. at

10. Thus, *Abbott*'s negative inference again settles the issue—the listing of these other enforcers means the Governor cannot be sued under *Ex parte Young*. *See* 85 F.4th at 333–34. Nor does the Governor's direction of someone else suffice. *Contra* Opp'n at 4–5, 12, 14. Any actor directed should be sued. *See Abbott*, 85 F.4th at 334–35.

**IV. The Motion Should Be Granted Because Wallace Inadequately Pleaded the Merits.**

If this Court reaches the merits, each of Wallace's theories fails. *First Amendment*: The Proclamation does not regulate anyone's speech, and its designations were motivated by the organizations' conduct. *See* Mot. at 12–13. *Due Process*: Wallace disclaims deprivation of land, Opp'n at 8, and clients, *id.* at 10; *see* Mot. at 13–14. His stigma claim fails because he forgoes ties to the named entities, Aff. ¶ 6, and is not named himself, Mot. at 13–14. Any liberty interest in speech merges with the First Amendment. *Id.* at 14. *Equal Protection*: The Proclamation did not target protected characteristics. *Id.* at 14–15. *Bill of Attainder*: The Proclamation is not legislative action and does not name Wallace. *Id.* at 15. *Preemption*: Wallace identifies a remedy, but not a cause of action. *See* Opp'n at 19; Mot. at 15. And no federal law explicitly or implicitly forbids Texas from regulating nuisances, property, and crimes in Texas. Mot. at 15–20. Wallace now relies on dormant foreign affairs preemption, Opp'n at 20, which the Supreme Court has not applied since 1968. *See* Jack L. Goldsmith, *Statutory Foreign Affairs Preemption*, 2000 SUP. CT. REV. 175, 210 n.131 (2000). *Right to Travel*: Regardless of the constitutional provision cited, *see* Opp'n at 21–22, nothing in the Proclamation or the statutes referenced restricts travel, *see* Mot. at 20. *Right to Counsel*: The Proclamation prevents no one from obtaining counsel. *See id.* And Wallace opposes this motion without reference to his clients. Opp'n at 10.

**CONCLUSION**

This Court should grant Governor Abbott's motion to dismiss.

Dated: September 2, 2026

Respectfully submitted,

/s/ Charles J. Cooper
Charles J. Cooper (Pro Hac Vice)
John D. Ramer (Pro Hac Vice)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Tel: (202) 220-9600
Fax: (202) 220-9601
ccooper@cooperkirk.com
jramer@cooperkirk.com

TREVOR W. EZELL
*General Counsel*
Tex. State Bar No. 24109849
OFFICE OF THE GOVERNOR OF TEXAS
P.O. Box 12428
Austin, TX 78711
Tel: (512) 463-3329
Fax: (512) 463-1932
trevor.ezell@gov.texas.gov

*Counsel for Defendant Greg Abbott, in his official capacity as Governor of Texas*

## CERTIFICATE OF SERVICE

On September 2, 2026, this document was filed electronically through the Court's CM/ECF system, which automatically serves all counsel of record.

*/s/ Charles J. Cooper*
Charles J. Cooper